THE NATIONAL SHAWMUT BANK OF BOSTON, trustee,
*vs.* CORA MANN CUMMING & others.

Suffolk.    January 3, 1950. — March 8, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Fraud. Husband and Wife,* Fraud. *Trust,* Express trust: validity; Situs. *Conflict of Laws. Equity Pleading and Practice,* Findings by judge. *Words,* "Do not find," "Find and rule."

A statement in the "Findings, ruling and order for decree" of the trial judge in a suit in equity, "I do not find" certain facts, was neither an inference of fact drawn from basic facts nor a conclusion of law, but meant that the burden of proving the facts recited in the statement had not been sustained.

The words "I find and rule," appearing in the "Findings, ruling and order for decree" of the trial judge in a suit in equity, did not import that the conclusion stated was required as matter of law, but that it was permissible as matter of law and was found as matter of fact.

Evidence in a suit in equity did not require the conclusion that a husband had a fraudulent intent to disinherit his wife in establishing an inter vivos trust of the greater part of his property for the benefit of himself, of her and of various members of his family, knowing that but

for such trust she upon his death would be entitled to more than half of such property.

The law of Massachusetts governed the validity of an inter vivos trust established by one domiciled in Vermont where it appeared that the trustees were the settlor and a bank domiciled and doing business in Massachusetts, that the trust property was present here at the time of the creation of. the trust and was then turned over to the trustee bank, that the trust instrument was completed upon its being executed here by the trustee bank, and that the instrument contained a provision that it should be "construed and the provisions thereof interpreted under and in accordance with the laws of . . . Massachusetts."

An inter vivos trust was not illusory although the settlor was one of two trustees and the trust instrument provided that the income, and such amounts of principal as he should direct, should be paid to him during his life and that he might amend or revoke the instrument.

BILL IN EQUITY, filed in the Superior Court on October 4, 1948.

The suit was heard by *Brogna*, J.

*G. J. Monti*, (*C. H. Amon, Jr. & C. K. Hurley* with him,) for the defendant Cora Mann Cumming.

*R. G. Dodge*, (*J. A. Perkins* with him,) for the plaintiff.

WILKINS, J. The plaintiff bank is the surviving trustee under a declaration of trust, dated August 25, 1944, in which the bank and the settlor, William Gray Cumming, of Barre, Vermont, were named as trustees. The settlor died on August 19, 1947. The defendants are the settlor's widow, Cora Mann Cumming, and the mother, brother, and three sisters of the settlor, and constitute all the surviving life beneficiaries under the trust instrument. This bill in equity seeks (1) the removal of a cloud upon the plaintiff's title as trustee to the trust property, as well as upon the beneficial interests of the defendants, the said cloud consisting of a claim asserted by the widow that the trust is invalid; and (2) a binding declaration of the rights of the parties under the trust instrument. G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1. The answers of the defendants other than the widow admit the allegations of the bill and join in the prayers for relief. The widow's answer sets up that the trust was created in bad faith with intent to defraud her of rights under Vermont law after waiver of the will, and that the validity of the trust is to be

determined by the laws of the State of Vermont. The widow (hereinafter called the defendant) appealed from a final decree adjudging that the trust is valid, and that she has no claim to the trust property except as a beneficiary under the trust instrument. The judge filed findings, rulings, and an order for decree. The evidence is reported.

We summarize certain facts found by the judge or by ourselves.

The trust agreement provided that the income, and such amounts of the principal as the settlor might direct in writing, should be paid to him for life; and that after his death the income should be paid equally to his widow, his mother, two brothers (one of whom predeceased him), and three sisters, the principal, if necessary, to be used to insure the receipt of $150 monthly by each beneficiary. Upon the death of the settlor and the last survivor of the life beneficiaries, the trust was to terminate and distribution be made to the nieces and nephews of the settlor then living and to the living issue of each deceased niece or nephew by right of representation. The settlor reserved the power to amend, to revoke in whole or in part, and to withdraw principal. The last paragraph read, "This instrument shall be construed and the provisions thereof interpreted under and in accordance with the laws of the Commonwealth of Massachusetts." Extensive powers of management were reserved to the trustees, but by an amendment of September 26, 1945, the settlor "delegated" his powers as cotrustee to the plaintiff.

The settlor died domiciled in Vermont at the age of fifty-seven. On January 5, 1925, when in Florida, he married the defendant. It was his first marriage. She was "several years" his senior and a widow with three children. The settlor, who until then had lived with his mother, was an eldest son who had assumed the obligations of the head of the family. He took these obligations very seriously, and strong family ties continued throughout his life. His business energies were devoted to the Granite City Tool Company, Inc., in Barre, which he had organized. It had a

branch in Georgia and one in Minnesota, each in charge of a brother.

In the summer of 1944 the settlor had accumulated a "sizable amount" of cash and government bonds, which he kept in Vermont. He was solicited by an employee of the plaintiff, with which his company had an account, to use its facilities as trustee, and went to its offices in Boston, and made arrangements for the creation of the trust. The attorney of the plaintiff drew the trust instrument, which the settlor signed in Vermont on August 25, 1944, and caused to be sent to the plaintiff in Boston, where it was executed by the plaintiff on August 26. The annexed schedule of trust property listed a check for $50,000 of a Barre bank, drawn on a Boston bank and payable to the plaintiff, and $50,000 in Canadian government and United States Treasury bonds. The check had been given to the plaintiff by the settlor on August 16, and the bonds had been sent by the Barre bank, and received by the plaintiff on August 19. Later, on five occasions between March 9, 1945, and August 29, 1945, the settlor delivered or sent, or caused to be sent, to the plaintiff bonds or checks in the total amount of $100,595.25, to be added to the principal. These transfers to the trust were the greater part of his property. On November 12, 1946, there was a withdrawal of $27,000.

The settlor and the defendant "had not gotten along well," and the "rupture became more pronounced in December, 1944, when being quite a sick man physically he made plans to go to Florida for his health, [and] he asked his wife to go with him, but her daughter was sick, and she remained home to take care of her." He returned from Florida on February 15, 1945, lived with her for a brief time in Barre, and about March 1 ceased to do so. In 1946 she brought a petition for a "divorce from bed and board forever," and in 1947 he asked her "to let him have a full divorce."

The judge stated: "I find that the settlor meticulously and designedly arranged his holdings and his business affairs so that his mother, wife, brothers and sisters would

share the income, or principal, if necessary, equally after his death. That he knew that but for this arrangement his widow would have been entitled under the laws of Vermont to $4,000 and one half of his estate. But I do not find that in doing what he did . . . he was actuated by bad faith, or that he sought to accomplish something which he under all the circumstances considered to be unjust or unfair to his wife. I do not find that he set up the trust with the fraudulent intent of preventing his wife from obtaining her distributive share of his property. I find and rule that the trust is valid. I find that the settlor intended that the trust be administered in Boston by the National Shawmut Bank as trustee."

Contrary to the defendant's contention, the statements prefaced "I do not find" or "I find and rule" are neither inferences of fact drawn from basic facts nor conclusions of law. *Kerwin* v. *Donaghy*, 317 Mass. 559, 565. Those prefaced "I do not find," we take to mean that the burden of establishing the recited facts has not been sustained. *Uccello* v. *Gold'n Foods, Inc., ante,* 319, 321, 322. The words "find and rule," the use of which usually imposes the burden of some elucidation upon this court, do not import that the conclusion stated is required as matter of law, but import rather that such conclusion is permissible as matter of law and is found as matter of fact. *Roney's Case,* 316 Mass. 732, 734. *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 137.

If the settlor had been domiciled in this Commonwealth and had transferred here personal property here to a trustee here for administration here, the transfer would have been valid even if his sole purpose had been to deprive his wife of any portion of it. *Redman* v. *Churchill,* 230 Mass. 415, 418. *Eaton* v. *Eaton,* 233 Mass. 351, 370. *Kerwin* v. *Donaghy,* 317 Mass. 559, 571. The Vermont law we understand to be otherwise and to invalidate a transfer made there by one domiciled there of personal property there if made with an actual, as distinguished from an implied, fraudulent intent to disinherit his spouse. See *Thayer* v.

*Thayer,* 14 Vt. 107; *Green* v. *Adams,* 59 Vt. 602; *Dunnett* v. *Shields,* 97 Vt. 419, 428; *Patch* v. *Squires,* 105 Vt. 405; *In re O'Rourke's Estate,* 106 Vt. 327, 331.

The plaintiff contends that the validity of the trust is to be determined by the law of this Commonwealth, and, in the alternative, that should the question be determined by Vermont law, the trust would still be valid on the judge's findings. The defendant, on the other hand, contends that the "trust is not valid under either Vermont or Massachusetts law." This argument is founded upon alleged illegality according to the law of Vermont and an assertion that our courts must look to the law of the State of domicil, which determines the right of succession to the settlor's personal property here. Reliance is placed upon *Ross* v. *Ross,* 129 Mass. 243, 245, to which may be added *Shannon* v. *White,* 109 Mass. 146, 148, *Cheney* v. *Cheney,* 214 Mass. 580, 581, *Russell* v. *Shapleigh,* 275 Mass. 15, 20, *Hite* v. *Hite,* 301 Mass. 294, 297, and *Phelan* v. *Conron,* 323 Mass. 247, 253. See G. L. (Ter. Ed.) c. 199, §§ 1, 2; Restatement: Conflict of Laws, § 301, comment b. The defendant's brief contains such statements as the "settlor was restricted or prevented by Vermont law from creating such a trust"; "the sole question is: Was the trust created to defraud the widow of the rights she has under Vermont law"; "capacity must be judged in the light of settlor's right to strip his wife of her dower rights, which in the last analysis is judged by Vermont law"; and the "trust property, all having come from Vermont, had its situs in Vermont."

One answer to the defendant's contentions is that, wholly apart from what may be the law of Vermont, it was not shown that the trust was created to defraud the wife of statutory rights in Vermont. The judge was not plainly wrong in not making such a finding. There was no evidence which compelled it. The findings which he did make, including the finding that the settlor knew that but for the trust arrangement his wife would be entitled to $4,000 and one half of his estate, meaning, of course, at its then valuation, are not tantamount to findings that the trust was

created, or added to, with intent to defraud her, nor are the findings inconsistent with one another.

Another independent and insuperable difficulty is that before death the settlor had effectively disposed of the trust property, which had its situs in this Commonwealth and was not subject here to any equity in favor of a wife or to any similar limitation upon his power of disposition. He had expressed an intent in the trust instrument that it should be construed and interpreted according to the laws of this Commonwealth. *Codman* v. *Krell*, 152 Mass. 214, 218. *Greenough* v. *Osgood*, 235 Mass. 235, 237–238. *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 460. See *Harvey* v. *Fiduciary Trust Co.* 299 Mass. 457, 464; *Amerige* v. *Attorney General*, 324 Mass. 648, 658.

The elements entering into the decision as to the law of which State determines the validity of the trust are, on the one hand in Vermont, the settlor's domicil, and, on the other hand in Massachusetts, the presence of the property or its evidences, the completion of the trust agreement by final execution by the trustee, the domicil and the place of business of the trustee, and the settlor's intent that the trust should be administered by the trustee here. The general tendency of authorities elsewhere is away from the adoption of the law of the settlor's domicil where the property, the domicil and place of business of the trustee, and the place of administration intended by the settlor are in another State. *Jackman* v. *Equitable Life Assurance Society*, 145 Fed. (2d) 945, 947 (C. C. A. 3). *Warner* v. *Florida Bank & Trust Co.* 160 Fed. (2d) 766 (C. C. A. 5). *Wilmington Trust Co.* v. *Wilmington Trust Co.* 26 Del. Ch. 397, 405–406. *Kitchen* v. *New York Trust Co.* 292 Ky. 706, 710. *Cutts* v. *Najdrowski*, 123 N. J. Eq. 481. *Hutchison* v. *Ross*, 262 N. Y. 381. *Shannon* v. *Irving Trust Co.* 275 N. Y. 95. Restatement: Conflict of Laws, §§ 294; 46, comment d; 49, comment b. Beale, Conflict of Laws, § 294.3. Land, Trusts in the Conflict of Laws, §§ 21–23. 44 Harv. L. Rev. 161. 89 U. of Pa. L. Rev. 360. See *Brandeis* v. *Atkins*, 204 Mass. 471; *Russell* v. *Joys*, 227 Mass. 263, 267; *Isaac-*

*son* v. *Boston Safe Deposit & Trust Co., post,* 469. The situation is unchanged by the fact that the one seeking to set aside the transaction is the widow of the settlor. *Spicer* v. *New York Life Ins. Co.* 237 Mo. App. 725, 743. *Lines* v. *Lines,* 142 Pa. 149, 165–166. *Roberts* v. *Chase,* 25 Tenn. App. 636, 647. We are of opinion that the question of validity is to be determined by the law of this Commonwealth. There was no error under our law in adjudging the trust to be valid when created, or in omitting to adjudge it to be invalid at the time of the additions to principal made in 1945.

We are not sure whether any contention is made that the trust instrument is illusory on its face apart from alleged fraud toward the widow. The trust is not illusory. *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 474–475, 476. *Kerwin* v. *Donaghy,* 317 Mass. 559, 572. See *O'Donnell* v. *Commissioner of Corporations & Taxation,* 317 Mass. 664, 672.

We have not outlined all the points referred to in the defendant's extended brief, believing that to do so would add nothing to our jurisprudence. Much of her argument seems immaterial to our view of the real issues. We have considered all the questions raised and are of opinion that there is no merit in any of them. These include the exceptions to the exclusion of evidence offered by the defendant as well as the denial of her motion for a new hearing on the ground of newly discovered evidence.

*Decree affirmed.*