## In the Matter of the Accounting of BANKERS TRUST COMPANY, as Executor of MABEL S. VAIL, Deceased.

Surrogate's Court, New York County, August 22, 1951.

*E. Stuart Sprague* for executor, petitioner.

*Williamson Pell, Jr.,* for Trustees of Dartmouth College and another, respondents.

*Davis, Polk, Wardwell, Sunderland & Kiendl* for Arthur A. Marsters and others, as executors of Theodore N. Vail, deceased, respondents.

*E. Seward Stevens* for Theodore V. Marsters, respondent.

*Debevoise, Plimpton & McLean* for Phillips Exeter Academy, respondent.

*Emmet, Marvin & Martin* for President and Fellows of Harvard College, respondent.

*McCanliss & Early* for Katherine V. Marsters, respondent.

*Alfred Norick,* special guardian for Pamela C. Marsters and others, infants, respondents.

FRANKENTHALER, S. Testatrix was married in the year 1907, in Massachusetts, the place of her then residence. Prior to her marriage, she and her intended husband entered into an antenuptial agreement in that Commownealth. The agreement provided that the intended husband deliver $150,000, or its equivalent in securities, to the testatrix and, upon her death, any part of the fund then remaining on hand and not used be divided among her issue or, in the event of her death without issue, such part of the fund become a part of the estate of the husband. Pursuant to the agreement, securities then having an approximte value of $150,000 were delivered to testatrix.

No child was born of the marriage but in the year 1915, testatrix and her husband adopted a child in the State of Vermont. In the year 1920, the husband died and his will was admitted to probate in Vermont. Testatrix died in the year 1950, a resident of New York County, and her will has been admitted to probate in this court. She was survived by her adopted daughter but by no issue of her blood. In this proceeding for the judicial settlement of the executor's account there have been included as parties the executors under the husband's will, the legatees under his will, the adopted daughter of testatrix and the daughter's issue.

The accounting executor has in his hands securities which may be certain of those delivered to deceased under the antenuptial agreement. A number of issues are raised in this proceeding including a question as to the identification and segregation of any securities derived by deceased from the antenuptial settlement and remaining unused at her death; a question as to whether or not such securities comprise assets of deceased's estate passing under her will; a question as to whether any such securities not comprising part of the estate pass, under the antenuptial agreement, to the adopted daughter only, to the adopted daughter and her issue, per capita, or to the estate of the deceased husband; a question as to whether any payment to which the husband's estate may be entitled should be made to his executors, to charitable legatees under his will or to the residuary legatee under that will, and there is the pervading question as to the extent to which this court may and should go to resolve each of these issues.

The principal issue is whether the antenuptial agreement effected an absolute transfer of the $150,000 fund to the testatrix or constituted a transfer of title which created rights to the fund in persons other than the testatrix. If the court should find that the agreement accomplished an outright transfer to the testatrix there is no secondary question and the fund comprises a part of the assets of her estate. If it is found that other persons have a claim to the fund, they are entitled to have the fund segregated from the estate assets. Insofar as the claims of such persons are concerned, it is not of consequence in this proceeding whether the antenuptial agreement be regarded as creating an *inter vivos* trust or a legal life estate. This court is not settling the account of the executor as the representative of a deceased trustee or deceased legal life tenant. The concern of the court is with the accountability of the executor for the assets comprising the estate of the testatrix and with the problems incidental to such accountability. In that connection consideration must be given to questions involving the identity and segregation of the estate assets and the disposition of claims against the estate.

The court has been asked to deviate from usual procedure and to express an opinion upon two limited issues only. The parties before the court are all those affected by any determination of the issues and they have indicated that a preliminary determination of two questions will permit the remaining issues concerning the antenuptial agreement and the executor's

account to be resolved by agreement of the parties. All have agreed that a preliminary decision be given (1) upon the question whether the word " issue " as used in the antenuptial agreement includes deceased's adopted daughter and (2) if the initial question is answered affirmatively, whether the agreement provides a distribution to issue per stirpes or per capita. In order to permit a voluntary adjustment between the parties, the court will express an opinion upon these questions.

For the interpretation of the antenuptial agreement, entered into in the Commonwealth of Massachusetts preliminary to a marriage ceremony in that jurisdiction, reference must be had to the law of the place where the contract was made and the marriage took place (*Matter of Weeks,* 294 N. Y. 516, 521; *Hutchison* v. *Ross,* 262 N. Y. 381, 396; *National Shawmut Bank of Boston* v. *Cumming,* 325 Mass. 457). The statutes of Massachusetts effective on the date of the agreement and on the date of the death of testatrix provided that a child legally adopted in that jurisdiction would take the same share of the property which the adopting parent could dispose of by will as he would have taken if born to such parent in lawful wedlock (Rev. Laws of 1902, ch. 154, § 7; General Laws, ch. 210, § 7) and that the word " child, or its equivalent," as used in a settlement, deed or will, would include a child adopted by the settlor, grantor or testator unless the contrary plainly appeared by the terms of the instrument (Rev. Laws of 1902, ch. 154, § 8; General Laws, ch. 210, § 8). The word " issue " has been held to be the equivalent of " child " as that word was employed in the statute (*Buckley* v. *Frasier,* 153 Mass. 525; *Wyeth* v. *Stone,* 144 Mass. 441). Examination of the statutes of Massachusetts and of the decisions of courts of that Commonwealth discloses an established policy to give full recognition to an adopted child and to award such a child a status with respect to his foster parent equivalent to that of a natural child (*O'Connell* v. *Powers,* 291 Mass. 153).

In the antenuptial agreement before the court, the disposition is to the issue of the testatrix. The agreement clearly intended to include issue of the marriage in contemplation of which the agreement was drawn, although issue of another marriage of the wife would be encompassed, and any child of the marriage between the parties to the agreement would be a beneficiary of the agreement. In employing the word issue, the husband was making a disposition to his own children which, under Massachusetts law, would include a child adopted by him (Rev. Laws .

of 1902, ch. 154, § 8; General Laws, ch. 210, § 8). Under the law of that jurisdiction, the child adopted by both parties to the agreement would have a status equal to that of a natural child of the marriage. Here the adoption took place in Vermont but is recognized in Massachusetts as conferring the same rights to succession to property as would exist in the State of adoption, except so far as such rights might exceed those provided in the Massachusetts law of succession (Rev. Laws of 1902, ch. 154, § 9 and General Laws, ch. 210, § 9; *Ross* v. *Ross,* 129 Mass. 243). The laws of Vermont, in turn, confer upon an adopted child the rights of inheritance of a natural child (Public Acts of 1906, tit. 17, ch. 152, § 3270; Revision of 1947, ch. 145, § 3042) and construe the word " issue " as including a child by adoption (*Matter of Walworth,* 85 Vt. 322).

The word issue as employed in the antenuptial agreement, included the adopted child of the parties to the agreement. The disposition in the agreement must be construed as one to issue, per stirpes and not per capita, under the rule established and uniformly followed in Massachusetts (*Dexter* v. *Inches,* 147 Mass. 324; *Jackson* v. *Jackson,* 153 Mass. 374; *Coates* v. *Burton,* 191 Mass. 180; *Ernst* v. *Rivers,* 233 Mass. 9).

When the parties have reached an agreement upon the basis of the determinations herein, such agreement may be filed and a decree settling the account may be submitted on notice or consent.