THE FIRST NATIONAL BANK OF MOUNT DORA, executor, *vs.* SHAWMUT BANK OF BOSTON, N.A., & another, trustees.[1]

Suffolk. February 9, 1979. — May 18, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Apportionment of tax burden. *Executor and Administrator,* Taxes. *Trust,* Taxes. *Conflict of Laws,* Trusts and estates.

Where an inter vivos trust instrument and a subsequently executed will contained conflicting provisions as to whether estate and inheritance taxes should be paid from the trust or from the residue of the testatrix's estate, extrinsic evidence was admissible to resolve the ambiguity, and, therefore, in an action by the executor of the will against the trustees, the judge erred in excluding evidence concerning the value of the testatrix's gross estate for Federal estate tax purposes and evidence from the attorney who had prepared the will. [141-148]

CIVIL ACTION commenced in the Probate Court for the county of Suffolk on June 8, 1976.

The case was heard by *Yasi,* J.

---

[1] Carl B. Rechner.

The Supreme Judicial Court granted a request for direct appellate review.

*Keith L. Hughes* for the plaintiff.

*Michael E. Hager* for the defendants.

WILKINS, J. In 1970 Harriett Peters, a resident of Connecticut, created a revocable trust in Massachusetts, of which the defendants are now the trustees. Under Article Third of the trust instrument, Peters directed that the trustees pay all estate and inheritance taxes imposed by reason of her death and all her debts and the expenses of administering her estate.[2] On August 6, 1974, while still a resident of Connecticut, Peters executed a will which may be read to direct her executor to pay all estate and inheritance taxes from the residue of her estate.[3] Peters

---

[2] Article Third in material part reads as follows:

"As soon as practicable after the death of the donor, the trustees shall determine, in such manners and on such evidence as they in their reasonable discretion shall deem sufficient, the aggregate amount of the following, to wit: (i) all estate, transfer, inheritance, legacy and succession taxes, or taxes in the nature of any thereof, including any and all interest and penalties in respect of the same, payable (at whatever time or times) by reason of the death of the donor, under any law, present or future, of the United States, or of any state or territory of the United States, on or with respect to any property includible under any such law in the gross estate of the donor, or any property (or the transmitting or receiving thereof) passing under the will of the donor or any codicil thereto, or otherwise payable by reason of the death of the donor on or with respect to any transfer or other disposition of property at any time made by her, including, without hereby limiting the foregoing generality, any amount or amounts payable by way of compromise of any such taxes, and (ii) all debts and funeral expenses of the donor and the expenses of administering her estate. The trustees shall, out of the principal of the trust property, pay the whole of said aggregate as follows: (i) to the donor's executors or administrators to such (if any) extent and on such terms as the trustees shall in their reasonable discretion see fit, and (ii) to the extent not paid to such executors or administrators, to the respective creditor or public officer who is entitled to receive any portion thereof and empowered to give a valid receipt therefor."

The language of certain amendments to the trust has no bearing on the issue before us.

[3] Article one of the will reads as follows:

"1. I direct that my executor, hereinafter named, shall pay all my

died on May 19, 1975, a resident of Florida, where her will has been admitted to probate, and the plaintiff, a Florida bank, has been appointed executor of her will.

The Florida executor commenced this action in the Probate Court for Suffolk County seeking a judgment that the trustees of the Massachusetts trust must carry out the direction of the trust instrument and pay all Peters' estate and inheritance taxes and all her debts and the expenses of administering her estate. The defendant trustees deny any obligation to pay estate and inheritance taxes and point to the provisions of article one of Peters' will, which they argue are controlling and place the entire burden of estate and inheritance taxes on the residue of Peters' estate. At trial the defendants acknowledged an obligation under the trust to pay Peters' debts and the expenses of administering her estate.

The trial judge ruled that where there was a conflict between "clear" terms of the will and "prior executed trusts," the will was the final expression of the decedent's intent and "the estate must bear the burden of the tax unless the will indicates a contrary intent" where there is no statute in aid of the executor's contention. In the course of the trial, the judge excluded evidence offered by the plaintiff concerning the value of the assets included in Peters' gross estate for Federal estate tax purposes and further excluded evidence from a member of the Connect-

---

just debts, the expenses of my last illness, and my funeral and burial expenses as soon as practicable after my death. I further direct that all legacy, succession, inheritance, transfer, and estate taxes, levied or assessed upon or with respect to any property which is included as part of my gross estate for the purpose of any such tax, shall be paid by my executor out of my estate in the same manner as an expense of administration and shall not be prorated or apportioned among or charged against the respective devisees, legatees, beneficiaries, transferees, or other recipients nor charged against any property passing or which may have passed to any of them, and that my executor shall not be entitled to reimbursement for any such tax or any portion thereof from any such person."

There was one codicil to the will giving tangible personal property to the two income beneficiaries of the residuary trust under the will.

icut bar who had prepared Peters' will. He entered a judgment which imposed liability on the trustees only for Peters' debts and the expenses of her estate. The Florida executor appealed, and we granted its application for direct appellate review.[4] We reverse the judgment and remand this case to the Probate Court for further proceedings. The judge should have received evidence of the nature and value of the assets included in Peters' gross estate for Federal estate tax purposes and should have admitted evidence concerning the circumstances under which Peters executed her will.

We summarize, briefly and generally, the dispositive provisions of the trust that were effective at Peters' death and the dispositive provisions of Peters' will. The trust provides for distributions to a nephew during his life, and, on his death, for distributions to various other relatives in equal shares. At the death of the survivor of the distributees, the trust property is to be distributed to The First Church of Christ, Scientist, in Boston. The trust further provides that the trust indenture and the trusts created "shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts." The will provides that the residue of the estate should be held in trust by the plaintiff as trustee, and the income paid equally to the same nephew who is named as the initial beneficiary of the trust and to a friend of the testatrix (both apparently residents of Florida) as long as they both are living. All income is to be paid to the survivor and at his or her death, the trust is to terminate and its assets are to be distributed to the Christian Science Church in Boston. The will authorizes disbursements of principal to either or both income benefici-

---

[4] The trustees also appealed, challenging (a) the judge's characterization of the terms of the trust in a respect which is not important at this stage of the proceeding and (b) the judge's admission in evidence of the trust instrument. As will be seen, the judge quite properly admitted the trust in evidence. Indeed, the trustees' answer admitted the existence and the terms of the trust.

378 Mass. 137                                    141

First National Bank of Mount Dora v. Shawmut Bank of Boston, N.A.

aries for their "comfortable support, maintenance, and welfare" and for their funeral expenses.

Because the judge concluded that the will was unambiguous and that it placed the tax burden on the residue of Peters' estate, and, consistent with that view, excluded all evidence concerning the assets included in Peters' gross estate for Federal estate tax purposes, the record does not show fully the financial consequences of the judge's ruling. Although the plaintiff might better have made detailed offers of proof concerning the excluded evidence, such offers were not necessary because it is clear that the judge would have excluded evidence intended to aid in the construction of Peters' will in any event, and that the exclusion, if erroneous, was prejudicial. See *Ratner* v. *Canadian Universal Ins. Co.*, 359 Mass. 375, 385 (1971). From the complaint we can discern certain essential facts which, if true, show the consequences of a ruling which places the entire estate and inheritance tax burden on the residue of Peters' estate. Peters' gross estate shown on her Federal estate tax return was approximately $2,285,000, of which only about $385,000 was attributable to the value of Peters' probate estate and of which approximately $1,100,000 was attributable to the assets in the Massachusetts trust.[5] The net Federal estate tax obligation shown on the return was about $437,000, a figure in excess of the value of all the probate assets. The return also indicated debts and expenses chargeable to the estate of about $75,000.

The situation involved here is atypical. Normally, in cases involving tension between an estate and the owner of out-of-State, nonprobate assets, the will or the law of the decedent's domicil, or both, would indicate that nonprobate assets should assume their share of estate and inheritance taxes, and the executor would commence an

[5] We do not have an indication of the nature of the other assets, valued at about $800,000, included in the gross estate. Some of these assets apparently were in New Jersey at Peters' death.

action in the situs State to recover his alleged due. If an inter vivos trust were involved, often it would be silent or neutral on the trustees' obligation to pay those taxes, and the situs State would have to determine the trust's obligations. As a conflict of laws choice, it could apply either the law of the decedent's domicil or its own internal law, which might or might not call for contribution from nonprobate assets. Of course, if the inter vivos trust expressly directed the trustees to pay certain estate and inheritance taxes from the trust, there would be no disagreement to that extent between the estate and the trust. A conflict could exist, however, if the will or the applicable law called for the trust to pay a greater share of such taxes than did the trust instrument.[6] If, on the other hand, the trust instrument directed that the trust pay no estate and inheritance taxes and the will did not constitute an amendment of the trust, the situs State might be inclined to apply its own law, the law governing the administration of the trust, and not the law of the decedent's domicil.

Here, the trust instrument instructs that the trust pay not only its pro rata share of estate and inheritance taxes but also all such taxes imposed by reason of the settlor's death. On the other hand, the will may be read to direct no apportionment of estate and inheritance taxes to nonprobate assets and, if so read, as will be seen (note 9, *infra*), Florida law would not be likely to override that direction, at least as to nonprobate assets as to which there is no contrary direction. These independent commands, the latter of which could not have been made intelligently with knowledge of the former, present an unusual problem.

---

[6] For example, the trust might provide that it pay a pro rata share of Federal estate taxes, and the will might provide that the trust pay those Federal estate taxes which were payable additionally by reason of the inclusion of the value of the trust assets in the decedent's gross estate.

The disposition of this case is not explicitly governed by statute. Federal law generally leaves to State law the extent of an inter vivos trust's obligation to contribute to the payment of estate and inheritance taxes. See *Warfield* v. *Merchants Nat'l Bank*, 337 Mass. 14, 18 (1958), discussing *Riggs* v. *Del Drago*, 317 U.S. 95 (1942). The Massachusetts apportionment statute (G. L. c. 65A, § 5) applies only to estates of Massachusetts residents. See *Warfield* v. *Merchants Nat'l Bank, supra* at 17. This court is not obliged to apply Florida law, including its apportionment statute. See *Warfield* v. *Merchants Nat'l Bank, supra; Isaacson* v. *Boston Safe Deposit & Trust Co.*, 325 Mass. 469, 472 (1950). In each of these cases, an executor of a foreign will, relying on the law of the testator's domicil directing apportionment, undertook to collect the portion of the Federal estate taxes attributable to the assets of a Massachusetts trust whose terms did not direct any contribution toward any death tax obligation of the testator. These cases were considered largely on the question whether a foreign executor could compel reimbursement here. In each instance, the answer was in the negative, and contribution was denied.

In the absence of any statute indicating otherwise, we see no reason why the provisions of a will must be given precedence over those conflicting provisions of an inter vivos trust which are to become operative at the settlor's death, particularly when the administration of nonprobate assets is involved. In today's estate planning, it is not reasonable to conclude that a will is always of greater significance than an instrument creating an inter vivos trust. Here, the will, which does not qualify as an amendment to the trust,[7] may be read to require Peters' execu-

---

[7] The trust instrument did not permit amendment by will. Any amendment had to be signed by the trustees. Careful draftsmanship would have produced a valid trust amendment consistent with any change of intention concerning estate and inheritance taxes which was arrived at when the will was prepared. An express acknowledgment in the will of an intention to relieve the trust of its tax obliga-

tor to pay the same taxes which the trust instrument directs be paid out of trust assets. If these conflicting provisions appeared in a single document, such as a will, we would admit extrinsic evidence to assist in resolving the ambiguity. See *McKelvy* v. *Terry*, 370 Mass. 328, 334 (1976); *Putnam* v. *Putnam*, 366 Mass. 261, 266-267 (1974). Similarly, such evidence would be admissible in Florida. See *Adams* v. *Vidal*, 60 So.2d 545, 547 (Fla. 1952); *Marshall* v. *Hewett*, 156 Fla. 645, 649 (1945). See also *Hackett* v. *Bankers Trust Co.*, 122 Conn. 107, 126-127 (1936). On the other hand, where there is no ambiguity in the language of the controlling instrument or instruments, the expressed intention must be carried out, even if the result is the failure of an intended gift. See *Whitbeck* v. *Aldrich*, 341 Mass. 326, 329 (1960); *Putnam* v. *Putnam*, *supra* at 266.

Although much can be said in favor of "clear" rules of law to guide estate planning decisions and the administration of estates, when a slip-up has obviously occurred in the estate planning process, evidence of the circumstances known to a testator-settlor may be particularly instructive in achieving the ultimate goal of recognizing and carrying out the testator-settlor's intention. Here, if the allegations of the Florida executor concerning the tax obligations of Peters' estate are proved, the view espoused by the trustees would result in total failure of all testamentary gifts, including the gift of income to Peters' friend, who is not an income beneficiary of the trust. There may be no logic in a result which would fully achieve an expressed testamentary purpose of paying all taxes from the residue while in the process destroying the only gifts expressed in the will. Why would Peters' will implicitly preserve the trustees' obligation to pay debts and expenses of the estate, a relatively small item, and yet relieve the trustees entirely of their obligation to pay

tions would have made clear any intended change in the allocation of tax obligations, and in effect made an implicit further gift to the trust.

378 Mass. 137                                          145

First National Bank of Mount Dora *v.* Shawmut Bank of Boston, N.A.

estate and inheritance taxes?[8] Without evidence of the circumstances relating to the preparation and execution of the will and evidence of what Peters knew or believed at that time, we cannot resolve the conflict, and even with that evidence the problem may remain.

Our analysis of the problem has largely assumed to this point that the internal law of Massachusetts, or the similar law of some other jurisdiction, would apply to this case. There is, however, a significant choice of law question. Although the issue might have been raised more squarely in *Warfield* v. *Merchants Nat'l Bank*, 337 Mass. 14 (1958), and in *Isaacson* v. *Boston Safe Deposit & Trust Co.*, 325 Mass. 469 (1950), in each opinion the court seems to have rejected the view that, as a matter of choice of law, Massachusetts should look to the law of a decedent's domicil to determine apportionment questions. Some other jurisdictions also have applied their own law, the law of the situs of the property, rather than the law of the decedent's domicil. See *Knowles* v. *National Bank*, 345 Mich. 671 (1956); *First Nat'l Bank* v. *First Trust Co.*, 242 Minn. 226 (1954); *Estate of Torian* v. *First Nat'l Bank*, 321 So.2d 287 (Miss. 1975); *Beatty* v. *Cake*, 236 Or. 498 (1963). We need not decide at this time whether the suggestion of the *Isaacson* and *Warfield* opinions on choice of law would be accepted today. Refusal to apply the law of the decedent's domicil has been criticized. See Scoles, Apportionment of Federal Estate Taxes and Conflict of Laws, 55 Colum. L. Rev. 261 (1955). In several jurisdictions the law of the decedent's domicil has been applied. See *Mazza* v. *Mazza*, 475 F.2d 385, 389 (D.C. Cir. 1973); *Doetsch* v. *Doetsch*, 312 F.2d 323, 328 (7th Cir. 1963); *Trust Co.* v. *Nichols*, 62 N.J. Super. 495, 508 (1960); *In re Estate of Gato*, 276 App. Div. 651, 655, aff'd mem., 301 N.Y. 653

---

[8] A reasonable resolution of the apparent conflict between the two instruments might be achieved by a finding that the "transferees, or other recipients" (see note 3, *supra*) whom the will relieved from contributing toward estate and inheritance tax obligations were not intended to include the trustees of the Massachusetts trust.

146                                378 Mass. 137

First National Bank of Mount Dora *v.* Shawmut Bank of Boston, N.A.

(1950); *First Nat'l Bank* v. *Wells,* 267 N.C. 276, 285 (1966). The application of the law of the decedent's domicil, if followed universally, would tend to ensure uniformity of treatment among nonprobate assets included in the decedent's gross estate. See Scoles, Estate Tax Apportionment in the Multi-State Estate par. 71.704.2, in 5 Inst. on Est. Plan. (1971).

It may be necessary to determine whether Massachusetts law, Florida law, or the law of some other State should be applied in this case. Evidence may assist in such a determination. In construing a will, the law of the decedent's domicil would normally be considered.[9] See

---

[9] The Florida apportionment statute in effect at Peters' death places taxes attributable to the probate estate on the residue, unless the will directs otherwise, and places taxes attributable to the value of an inter vivos trust on the trust "except as otherwise directed by the trust instrument with respect to the fund established thereby, or by the decedent's will." 1965 Fla. Laws, c. 65-230, § 734.041 (1) (c) (current version at Fla. Stat. § 733.817 [1] [c]). There is no instructive interpretation of this provision by the Supreme Court of Florida. The decision of a Florida District Court of Appeal in *In re Estate of Strohm,* 241 So. 2d 167 (Fla. Dist. Ct. App. 1970), is particularly uninstructive. That case involved a trust which directed that taxes with respect to the trust property should be paid by the trust and a will which directed that all taxes should be paid from the residue of the estate. A majority of the three-judge court held, affirming the lower court without opinion, that the taxes were all payable from the residue. The dissenting judge wrote an opinion in which he indicated that the will did not amend the trust, that the trust and will were of equal validity, that "neither can be said to supersede the other" (*id.* at 169), and that taxes should be apportioned under the Florida statute. A later opinion from a different Florida District Court of Appeal involved a will which was silent on the allocation of tax burdens and a trust which stated an obligation to pay all taxes. *Guidry* v. *Pinellas Cent. Bank & Trust Co.,* 310 So. 2d 386 (Fla. Dist. Ct. App. 1975). The two-judge majority rejected the executor's claim for reimbursement of all estate and inheritance taxes, because they thought the statute allowed trust directions concerning such taxes to apply only to taxes attributable to the trust assets. *Id.* at 389. A dissenting judge would have given full recognition to the direction in the trust and considered the statute irrelevant. *Id.* at 390. A noted commentator has argued that language similar to that appearing in the Florida statute should not bar the assumption of all estate taxes by a trust pursuant to the terms of the trust. See A.J. Casner, Estate Planning 1135 n.40 (3d ed. 1961 & Supp.1977).

378 Mass. 137                                          147

First National Bank of Mount Dora *v.* Shawmut Bank of Boston, N.A.

*B.M.C. Durfee Trust Co.* v. *Franzheim*, 349 Mass. 335, 338 (1965). In construing a trust instrument and rights and obligations under it, the law of the situs of the trust would often be given recognition, particularly when, as here, the trust expressly so directs.[10] See *New England Merchants Nat'l Bank* v. *Mahoney*, 356 Mass. 654, 656-657 (1970); *National Shawmut Bank* v. *Cumming*, 325 Mass. 457, 463-464 (1950); Restatement (Second) of Conflict of Laws § 268 (1971); 5 A. Scott, Trusts § 579 (3d ed. 1967). In particular circumstances, there may be reason to look to the law of that jurisdiction with which the testator-settlor had the greatest contact at significant times (such as her domicil at the time of execution of the trust and will), or perhaps one would look to the law of that jurisdiction which the testator-settlor had reason to believe would be applicable. See Restatement (Second) of Conflict of Laws § 268 (2) (1971);[11] 5 A. Scott, Trusts § 576 (Supp. 1979). Findings on these points may be instructive in resolving the choice of law issue. Another factor to consider on the choice of law question is the language in the trust that the "indenture of trust and the trusts hereby

---

[10] The Massachusetts apportionment statute (G. L. c. 65A, § 5), which by its own terms applies only to the estate of a person who died a resident of Massachusetts, places the burden of the tax attributable to the probate assets on general funds of the estate, unless the will directs otherwise (*id.* at [1]), and imposes on an inter vivos trust that proportion of the taxes which the value of the trust assets bears to the gross estate, unless the trust instrument directs otherwise "with respect to the fund established thereby" or unless the will directs otherwise (*id.* at [2]).

[11] In a discussion of conflict of law policies, Dean Scoles has proposed several considerations, although they are not consistent guides in all instances. See Scoles, Estate Tax Apportionment in the Multi-State Estate par. 71.704.2, in 5 Inst. on Est. Plan. (1971). He suggests "the law of the state should be applied which would give maximum effect to the estate owner's intended scheme of distribution." *Id.* He also suggests that uniformity of treatment of the various portions of an estate should be attained by applying the same apportionment rule to all parts of the estate. *Id.* Where there is a conflict among the laws of two States, he suggests resolution may be attained by reference to the State with the dominant interest. *Id.*

created shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts."

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*