WILLIAM RUDOW[1] *vs.* ALBERT FOGEL.

Essex.   May 20, 1981. — September 17, 1981.

Present: ARMSTRONG, ROSE, & DREBEN, JJ.

*Trust,* Constructive trust.  *Fiduciary.   Conflict of Laws.*

The law of New York should have been applied in an action to determine
   whether the plaintiff's uncle was holding certain real estate located in
   Massachusetts in constructive trust for the plaintiff where the defend-
   ant, the plaintiff, and the plaintiff's mother were domiciled in New
   York at the time the plaintiff's mother conveyed the property to the
   defendant in that State and where the mother's legitimate expectation,
   enforceable under New York law, was that the defendant would hold
   the property for the plaintiff.  [432-439]

BILL IN EQUITY filed in the Superior Court on January 12,
1973.

Following the decision of the Supreme Judicial Court
reported in 376 Mass. 587, the case was heard by *Linscott,* J.

*James T. Ronan (Mary P. Harrington* with him) for the
plaintiff.

*Bertram Glovsky (Jane Kilduff* with him) for the defendant.

DREBEN, J.  This dispute is the sequel to *Rudow* v. *Fogel,*
376 Mass. 587 (1978), and involves a parcel of real estate
located in Rockport, Massachusetts, which has been the
subject of litigation since the death of the plaintiff's mother
in 1963.[2]  The principal issue in this appeal is what law
should Massachusetts apply in determining whether the de-
fendant, the plaintiff's uncle, holds the property in con-

---

[1] By Marvin Rudow, his father and next friend.

[2] A brief explanation of the prior litigation involving the defendant and
the plaintiff's father appears in *Rudow* v. *Fogel,* 6 Mass. App. Ct. 822
(1978), and in *Rudow* v. *Fogel,* 376 Mass. at 588-589.  The Supreme Judi-
cial Court agreed with the ruling of this court that the present action was
not barred by the principles of former adjudication.  *Id.* at 588.

structive trust for the plaintiff. The trial judge found that the property was transferred to the defendant in New York on an oral trust at a time when the plaintiff, his mother, and the defendant were all domiciled in New York. We hold that, in the circumstances of this case, Massachusetts should look to New York law.

We state the relevant facts found by the trial judge. Marvin and Florence Rudow, the parents of the plaintiff William Rudow, purchased the Rockport property in 1958, taking title as tenants by the entirety. They operated a jewelry store in Rockport during the summer but lived in New York City during the rest of the year, where Florence taught school. In 1961, William's parents separated, Florence brought divorce proceedings in New York, and Marvin moved to Rockport. The plaintiff and Florence lived in New York with Florence's mother and with the defendant Albert Fogel, who was Florence's brother.

Great animosity developed between Marvin and Florence. Nevertheless, in 1962, while Florence was hospitalized for cancer, Marvin conveyed his interest in the Rockport property to Florence. The judge found this was done "out of a sense of remorse over the failure of the marriage and also because he felt sorry for his wife." The conveyance was a gift to Florence without any promise on her part of any kind.

In May, 1962, Florence made a will which, after several small gifts, left the residue of her property in trust for the plaintiff to be distributed to him at age twenty-five.[3] Thereafter, on July 27, 1962, "anxious to keep the property away from her husband, then and in the future," Florence conveyed the Rockport property to the defendant in New York. The transfer was without consideration. The judge found, and his finding is not clearly erroneous, that at the time of transfer the defendant orally agreed that he would hold the property for the benefit of the plaintiff and "would turn it

---

[3] The plaintiff was born on March 11, 1956. We note that he has now reached the age of twenty-five.

over to the plaintiff when [he] reached maturity." The judge also found that there was no fraud on the part of the defendant.

It appears that there is a difference between Massachusetts local law[4] and New York law as to when a confidential (fiduciary) relationship may be found between close family members so as to impose a constructive trust. While recognizing that "respectable authority," including the State of New York,[5] imposes a constructive trust on the principle "that a confidential relationship arises where the conveyance is made between members of a family," *Ranicar* v. *Goodwin*, 326 Mass. 710, 713 (1951), the Supreme Judicial Court has ruled, as a matter of Massachusetts local law, that "a confidential relationship does not arise merely because the conveyance was made between members of the family, even if the transferee promised to hold the land in trust." *Meskell* v. *Meskell*, 355 Mass. 148, 152 (1969). The court explicitly rejected Restatement (Second) of Trusts § 44, Comment c (1959).[6] *Id.* This holding was reaffirmed in

---

[4] As used in this opinion, the terms "local law" or "internal law" refer to the laws of a given jurisdiction exclusive of its rules as to choice of law (conflicts rules). See Restatement (Second) of Conflict of Laws § 4(1) (1971).

[5] The authority cited by the court in *Ranicar* v. *Goodwin* included *Sinclair* v. *Purdy*, 235 N.Y. 245, 253 (1923).

[6] "Comment c. Where transferee is in a confidential relation to transferor. Where the owner of land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, the transferee will be compelled to hold the land upon a constructive trust for the transferor, if the transferee at the time of the transfer was in a confidential relation to the transferor. . . . Such a confidential relation exists not only where there is a fiduciary relation such as exists between attorney and client, . . . and the like, but also where, *because of family relationship* or otherwise, the transferor is in fact accustomed to be guided by the judgment of the transferee or *is justified in placing confidence in the belief that the transferee will act in the interest of the transferor.* . . . It would seem, indeed, that wherever the transferee orally agrees to hold the property transferred to him in trust for the transferor there is a sufficient relation of confidence thereby created to justify imposing a constructive trust upon him if he breaks his promise; but some courts require additional evidence of confidence in the relation between them before they will impose a constructive trust." (Emphasis supplied.)

*Kelly* v. *Kelly,* 358 Mass. 154, 156-157 (1970). See also *Markell* v. *Sidney B. Pfeifer Foundation, Inc.,* 9 Mass. App. Ct. 412, 443-444 (1980). Compare *Samia* v. *Central Oil Co.,* 339 Mass. 101, 112 (1959), where additional factors resulted in a fiduciary relationship.

New York law permits a confidential relationship to be found "in the bond of kinship," and "unjust enrichment under cover of the relation of confidence . . . puts the court in motion." *Sinclair* v. *Purdy,* 235 N.Y. 245, 253 (1923). See also *Farano* v. *Stephanelli,* 7 App. Div.2d 420, 424 (N.Y. 1959); *Janke* v. *Janke,* 47 App. Div.2d 445, 448-449 (1975), affirmed, 39 N.Y.2d 780 (1976). See also 1 Scott, Trusts §§ 44.2, 45.2 (3d ed. 1967) and cases cited, and 4 Palmer, Restitution § 19.3(b) (1978), which criticizes the Massachusetts rule.

The trial judge, applying Massachusetts local law, ruled that there was no constructive trust. Although he refused specific performance, he held that the plaintiff was not without remedy, and entered judgment for the plaintiff in the amount of the fair value of the property less expenses incurred by the defendant. The award to the plaintiff in the amount of the value of the property, less reasonable expenses, is in accord with Massachusetts law. See *Cromwell* v. *Norton,* 193 Mass. 291, 292-293 (1906); *Kemp* v. *Kemp,* 248 Mass. 354, 357-358 (1924); *Collins* v. *Hillis,* 7 Mass. App. Ct. 883 (1979) (action by beneficiary of promise).

In determining that there was no constructive trust, the judge followed the traditional conflicts rule which looks to the law of the situs for determining all material questions involving legal or beneficial interests in land. See, e.g., *Herman* v. *Edington,* 331 Mass. 310, 314 (1954) (whether sufficient declaration of an express trust); *Hill* v. *Peterson,* 323 Mass. 384, 386 (1948) (resulting trust).[7] See also 5 Scott, Trusts § 652, at 4123 (3d ed. 1967).

---

[7] We note that in both *Herman* v. *Edington* and *Hill* v. *Peterson* there was no apparent difference between the internal law of the situs and the law of the other concerned jurisdiction. Hence, there was no serious choice-of-law question before the court.

The Supreme Judicial Court has, however, in a series of cases, rejected the notion that a single test is appropriate for determining which law governs all questions relating to a transaction. The court can be said to have adopted a "more functional approach." See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 541 (1979). See also Restatement (Second) of Conflict of Laws § 6(2) (1971).[8]

Thus, although the traditional tort conflicts rule provides for reference to the law of the place where the tort occurred, in *Pevoski* v. *Pevoski*, 371 Mass. 358, 360 (1976), the court recognized that "another jurisdiction may sometimes be more concerned and more involved with certain issues than the State in which the conduct occurred." In that case, which involved a three-car collision in New York State, the Pevoski automobile was registered in Massachusetts (as apparently were the other two) and all three vehicles were driven by Massachusetts residents. The plaintiff, a passenger in the car driven by her husband, brought an action against him for damages, and he defended on the ground of interspousal tort immunity. The court held that Massachusetts law governed that question. After pointing out that "the economic and social impact of this litigation will fall on Massachusetts domiciliaries and a Massachusetts insurer," the court concluded, "New York has an undoubted interest in enforcing its traffic laws and in making its highways safe for travel but it has no legitimate interest in regulating the interspousal relationships of Massachusetts domiciliaries who chance to be injured within its borders." *Id.*

---

[8] Section 6(2) sets forth the choice of law factors which are relevant where there is no statutory directive as to choice of law. These factors include:

"(a)  the needs of the interstate and international systems,

"(b)  the relevant policies of the forum,

"(c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d)  the protection of justified expectations,

"(e)  the basic policies underlying the particular field of law,

"(f)  certainty, predictability and uniformity of result, and

"(g)  ease in the determination and application of the law to be applied."

Although the court in *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, had no occasion to look to foreign law, *id.* at 541, it rejected reference to the law of the place of making of a contract as determinative of all issues involved in the transaction. *Id.* The court noted, "[T]here is nothing unusual about the laws of different States applying respectively to various phases of a single transaction or incident." *Id.* at 542.

While the court has not recently ruled on choice-of-law questions concerning trusts involving land, it has rejected the law of the situs as the only criterion for resolving all questions pertaining to an inter vivos trust. This is true even if the trust expressly directs that the trust shall be governed by and construed in accordance with internal Massachusetts law. In *First Natl. Bank* v. *Shawmut Bank*, 378 Mass. 137, 147-148 (1979), a Connecticut settlor created a revocable inter vivos trust in Massachusetts and directed her trustees to pay from the trust all estate and inheritance taxes imposed by reason of her death. Her will, executed while she was a resident of Connecticut but probated in Florida, her domicil at the time of her death, provided that such taxes were to be paid from the residue of her estate. In sending the matter back for more findings, the court found a significant choice of law question despite earlier Massachusetts cases[9] which appeared to have rejected a reference to any law, other than Massachusetts local law, to determine tax apportionment questions for Massachusetts trusts. The court found it unnecessary to decide "at this time whether the suggestion of the *Isaacson* and *Warfield* opinions on choice of law would be accepted today." *Id.* at 145. While recognizing that the law of the situs would often be given recognition in construing the trust instrument and rights and obligations under it, particularly when the trust expressly so directs, the court pointed out, "In particular circumstances, there may be reason to look to the law of

---

[9] *Isaacson* v. *Boston Safe Deposit & Trust Co.*, 325 Mass. 469 (1950), and *Warfield* v. *Merchants Natl. Bank*, 337 Mass. 14 (1958).

that jurisdiction with which the testator-settlor had the greatest contact at significant times (such as her domicil at the time of execution of the trust and will), or perhaps one would look to the law of that jurisdiction which the testator-settlor had reason to believe would be applicable." *Id.* at 147.

We think these recent Massachusetts cases suggest that a trial court should examine the interests of both concerned jurisdictions, here Massachusetts and New York, and the interest of our interstate system before deciding what law is appropriate for Massachusetts to apply. See Restatement (Second) of Conflict of Laws § 6(2) (1971), set forth in note 8, *supra.* See generally Von Mehren & Trautman, Multistate Problems 193-200, 59-65, 76-79 (1965); Hancock, Conceptual Devices for Avoiding the Land Taboo in Conflict of Laws: The Disadvantages of Disingenuousness, 20 Stan. L. Rev. 1, especially 39 (1967).

The most important interest of the situs in land transactions is the protection of bona fide purchasers or other persons who rely on the record title. Additionally, it is desirable for purposes of convenience that a purchaser and his title searchers need consult only the law of one jurisdiction. See Restatement (Second) of Conflict of Laws § 223, Comment b (1971); Von Mehren & Trautman, *supra* at 197; Hancock, *supra* at 22. Here there are no such persons involved as these proceedings are solely between the defendant, the record holder of the real estate, and the plaintiff. See *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 44 (1980) (registered land). Massachusetts also has an interest in upholding its Statute of Frauds; however, the policy underlying the Statute of Frauds is not here involved to any greater degree than in any other situation involving a constructive trust.

The concern at stake is not related to the situs of property but is analogous to the one recognized in *Pevoski* v. *Pevoski,* 371 Mass. at 360-361. Massachusetts is interested in establishing for its domiciliaries the obligations of family members to one another. New York has a similar interest for its

domiciliaries. Here, New York "has the dominant contacts and the superior claim for application of its law." *Id.* at 360.

The defendant, his sister and the plaintiff were domiciled in New York at the time the property was transferred to the defendant in that State. It appears that Florence Rudow had an attorney for the transaction. She knew that she was not yet divorced. Both her will and the judge's findings indicate that a primary reason for the transfer was to prevent Marvin from having any interest in the form of marital rights or otherwise in the property. Florence's legitimate expectation, enforceable under New York local law, was that her brother would hold the property for her son.

In estate or commercial planning areas, the intentions of the settlor-testator or the contracting parties are significant both for local law and choice-of-law decisions. See Restatement (Second) of Conflict of Laws § 6(2) (1971), note 8, *supra,* which lists as a factor "the protection of justified expectations." See generally Ehrenzweig, The Statute of Frauds in the Conflict of Laws: The Basic Rule of Validation, 59 Colum. L. Rev. 874 (1959). See also Trautman, A Comment on Twerski and Mayer: A Pragmatic Step Towards Consensus as a Basis for Choice-of-Law Solutions, 7 Hofstra L. Rev. 830, 838 (1979). Cf. *National Shawmut Bank* v. *Cumming,* 325 Mass. 457, 463 (1950). The intention of the testator-settlor was in the forefront of the choice-of-law discussion in *First Natl. Bank* v. *Shawmut Bank,* 378 Mass. at 147, where the court referred to the possibilities of looking to the law of the testator-settlor's domicil at the time of the execution of her will and trust, or "to the law of that jurisdicion which the testator-settlor had reason to believe would be applicable." See also *Polson* v. *Stewart,* 167 Mass. 211 (1897), where, speaking through Holmes, J., the court applied North Carolina law to validate a covenant between husband and wife whereby the husband agreed to surrender all of his marital rights in land located in Massachusetts. "If valid by the law of North Carolina there is no reason why the contract should not be enforced here. The general principle is familiar . . . . [W]e see no ground of policy for an exception." *Id.* at 215. See also *Bernkrant* v. *Fowler,* 55 Cal. 2d 588, 595-596 (1961).

Moreover, the interests of our interstate system as well as the interests of New York and Massachusetts are furthered by applying a single law in determining whether a given situation creates a fiduciary relationship. It is desirable that the same law apply to all property involved in the same transaction wherever situated. "[A]wkward or arbitrary results" can be produced, see *Choate, Hall & Stewart* v. *SCA Servs., Inc.,* 378 Mass. at 541, if different laws are applied to different portions of a settlor-testator's property based solely on the fortuitous physical location of his or her assets. In *Keith* v. *Eaton,* 58 Kan. 732, 738 (1897), a testator had owned parcels of land located in four different states. The possibility of applying four different rules of construction in determining whether an illegitimate son was included as an heir "furnish[ed] the reason for giving over to the law of [the] testator's domicile the interpretation of his will, unless to do so contravenes the law of the place where the will is probated." See also *In re Estate of Clark,* 21 N.Y.2d 478, 485 (1968), where the court held that the law of Virginia, the testator-settlor's domicil, governed the widow's right of election including assets held by a New York trustee. Compare *National Shawmut Bank* v. *Cumming,* 325 Mass. at 462-463. See generally 5 Scott, Trusts § 648, at 4097 (3d ed. 1967). See also Restatement (Second) of Conflict of Laws § 223, Comment i (1971), which, as set forth in the margin, suggests that New York law be applied in this case.[10]

There are no policy considerations against applying that law here. Massachusetts is not opposed to constructive trusts. To the contrary, in *Kelly* v. *Kelly,* 358 Mass. at 156,

---

[10] "i. *Collateral questions.* . . . [T]he courts of the situs would usually apply their local law to determine whether a conveyance transfers an interest in land and the nature of the interest so transferred. On the other hand, these courts might apply the local law of some other state to determine questions that are incidental or collateral to the conveyance. So . . ., for example . . . if the basis of A's claim is that B obtained delivery of the deed in breach of a fiduciary obligation owed A, the X court would probably apply the local law of the state having the most significant relationship to the parties with respect to the particular issue in determining whether B did owe A a fiduciary obligation and, if so, whether this obligation was breached."

which held Massachusetts does not find a fiduciary relationship merely because the parties are family members, the court recognized the need for imposing constructive trusts to avoid unjust enrichment where legal title is obtained "in violation of a fiduciary relation." Massachusetts would impose no legal impediment even if the defendant were a Massachusetts domiciliary, had he wished to honor his promise, *Twomey* v. *Crowley*, 137 Mass. 184, 185 (1884), and, indeed, as the court below correctly ruled, Massachusetts law does impose an obligation on the promisor to return the value of the property. *Kemp* v. *Kemp*, 248 Mass. at 357-358.

Our conclusion that New York law applies was, of course, not anticipated by the trial judge and, as a result, he made no findings as to whether there was an abuse of a confidential relationship under New York law. Our previous discussion has indicated that there are differences between Massachusetts and New York law and that a confidential (fiduciary) relationship will be much more readily found between family members in New York. However, the question is still one for determination by the trier of fact. *Sinclair* v. *Purdy*, 235 N.Y. at 252; *Farano* v. *Stephanelli*, 7 App. Div.2d at 427; *Sharp* v. *Kosmalski*, 40 N.Y.2d 119, 122-123 (1976).

The other issues raised by the parties are either without merit (especially their claims of inadequate pleading) or not argued within the meaning of Mass.R.A.P. 16(*a*)(4), as amended, 367 Mass. 921 (1975).

The matter is remanded to the Superior Court for further proceedings consistent with this opinion, including a determination whether there was, in fact, a confidential relationship between Florence Rudow and the defendant. The trial judge may in his discretion decide that question without hearing additional evidence. If he determines that there was a confidential relationship, the judgment is to be vacated and a new judgment is to be entered which shall include an order for the transfer of the property to the plaintiff. If it is determined that there was no confidential relation-

ship,[11] the judgment of May 12, 1980, is to stand, subject to such modification as the trial judge deems appropriate to reflect the reasonable expenses of or charges to the defendant since that date.

*So ordered.*

---

[11] Since both New York (see *In re Buehler's Estate,* 186 Misc. 306 [Sur. Ct. N.Y. County 1945], affirmed, 272 App. Div. 757 [N.Y. 1947]; *Sutton v. Sandler,* 18 App. Div.2d 362, affirmed, 13 N.Y.2d 1007 [1963]) and Massachusetts appear to give the plaintiff a remedy even in the absence of a constructive trust, we need not consider which law should be applied.