EDNA HATTON *vs.* ROBERT MEADE, administrator.

Middlesex.  November 25, 1986. — January 7, 1987.

Present: GREANEY, C.J., CUTTER, & SMITH, JJ.

*Practice, Civil,* Directed verdict, Judgment notwithstanding verdict, Jury trial, Jury issues, Judicial discretion, Appeal, New trial. *Trust,* Constructive trust. *Fiduciary.*

In a civil trial wherein the plaintiff sought enforcement of a constructive trust as well as other relief, the defendant, who at the close of the evidence moved that the trust issue "be reserved for decision by the court," but failed to move for a directed verdict on that count, thereby waived any objection to the sufficiency of the evidence to support that count, which precluded the granting of the defendant's motion for judgment notwithstanding the verdict, as well as appellate review of the sufficiency of the evidence to support the jury's verdict, in response to a special question, that the defendant held the locus in question on constructive trust for the plaintiff. [360-362]

Where a losing party in a civil case fails to move for a directed verdict at the close of all the evidence, thus waiving any objection to the sufficiency of the evidence to support the verdict, the only relief potentially available to him is the granting of a new trial if that is necessary to prevent a manifest injustice. [362]

On appeal by the defendant in an action seeking to establish that a certain house was held on constructive trust for the benefit of the plaintiff, it was held that the evidence at trial was sufficient to support the jury's verdict that from the conduct of the defendant's intestate some form of trust of the locus arose for the plaintiff's benefit and that the imposition of a constructive trust was not a result which involved any "manifest injustice." [362-365]

CIVIL ACTION commenced in the Superior Court Department on August 25, 1981.

The case was tried before *James L. Vallely,* J.

*J. Owen Todd* for the defendant.
*Clyde K. Hanyen* for the plaintiff.

CUTTER, J. This is an action in which the plaintiff seeks to enforce a constructive trust upon a house which she claims was given to her by the defendant's decedent. Judgment was entered for the plaintiff on count II of the complaint, later described, and for the defendant on counts I and III. The defendant has appealed from various rulings affecting count II. No appeal from the judgments for the defendant on counts I and III is before us. The evidence would permit the finder of the facts to conclude that the events set out below took place.

The decedent met the plaintiff in high school. After the decedent returned from military service he attended college and law school. While in college the decedent saw the plaintiff every day and they frequently went out socially together. During this period the decedent lived in his parents' house with them. After his father died, he continued to live with his mother, whom he supported. She was elderly, handicapped or disabled, and nearly blind. The decedent continued to see the plaintiff every night.

The plaintiff and the decedent cohabited as early as 1957 on a trip, taken together and with others to a wedding in Pennsylvania. Then and subsequently the decedent introduced her as his wife to a considerable number of persons. They later traveled together and participated in many household and other activities together essentially as if married. The plaintiff admitted that she never met the decedent's principal work supervisor and was not introduced by the decedent as the decedent's wife to some lawyers and others who were close friends of the decedent.

At Christmas, 1972, the decedent gave the plaintiff a Christmas card, signed by the decedent, on which was written, "[T]his is your Christmas gift this year — 76 Adena Road," (hereafter the locus). There "was a key attached . . . taped to the card." Title to the locus originally was put in the decedent's name only because, so he told the plaintiff, it would be easier for him to get financing without her becoming involved. The plain-

tiff has made a "diligent search" for the card but has not been able to find it.

The plaintiff moved to the locus in the spring of 1973. The decedent gave the plaintiff the deed (to him) of the locus after the closing and she kept it for four years. The decedent then asked for it to "have it changed over" to her name. The plaintiff returned the deed to the decedent and since then has never seen it or any other deed to the locus. She testified that she never had any doubt that the decedent intended the locus to be hers, because he always "did what he said he was going to do." The decedent paid the mortgage, the taxes, and the insurance on the locus. The decedent and the plaintiff shared the cost of utilities and maintenance. The plaintiff estimated that she had spent about $3,800 in the aggregate to improve the locus.

The decedent and the plaintiff acted and lived in the house as husband and wife, although the decedent never stayed at the locus overnight but always returned to his mother's house. The plaintiff and the decedent had planned to get married. They never did marry, however, because his father became ill, then her father became ill, and then he found it necessary to take care of his mother.

The decedent and the plaintiff each filed tax returns as single taxpayers. The plaintiff never filed any government document as the wife of the decedent except at customs when they returned from Jamaica after going there as husband and wife. Her name at her place of work, her social security number, insurance policies, driver's license, and paycheck all used and use the surname of her parents and not that of the decedent.

The parties entered into a stipulation in this court as follows: The decedent died intestate. He had no brothers or sisters. His sole heir was his mother, who was ninety-three years old at his death. She died testate leaving as the sole beneficiary of her estate a charitable foundation named for the decedent.

The complaint in the present case alleges that the decedent's date of death was January 28, 1981. The defendant was appointed his administrator on May 11, 1981.

The complaint contained three counts. Count I was for services rendered by the plaintiff to the decedent during their relationship. Count II sought establishment of a constructive trust of the locus for the benefit of the plaintiff. Count III asked recognition of a common law marriage between the plaintiff and the decedent.[1] A jury trial took place on February 21-22, 1985. The defendant filed a motion for a directed verdict on counts I and III at the close of the plaintiff's evidence. At the close of all the evidence the defendant moved "that count II be reserved for decision by the court." This motion was denied. The judge put essentially the following special questions to the jury, and received the following answers:

1. Was the plaintiff the wife of the decedent?         No.
2. Did the decedent hold the locus in trust for         Yes.
   the plaintiff?
3. Did the plaintiff perform services for the           No.
   decedent during his lifetime?
4. If your answer to this previous question       [Answer not
   is "yes", what is the value of                 necessary.]
   these services?

The defendant then filed a motion for judgment n.o.v. on count II of the complaint, on the basis that the evidence was insufficient to support a verdict for the plaintiff on that count. The motion was denied. Judgment on the jury verdict on the special question on count II was entered on March 25, 1985, ordering the defendant to execute and deliver a deed to the house. The conveyance was to be subject to an existing mortgage and free and clear of all liens for Federal or State taxes owed by the decedent's estate. The defendant has filed

---

[1] Count III alleges that the plaintiff and the decedent in December, 1957, traveled to Pennsylvania and entered there "into a common law marriage," recognized there "as a lawful form of marriage," and thereafter they "cohabited" in various places in Massachusetts. These allegations are not before us because the plaintiff has not claimed on appeal from the judgment for the defendant on count III. See Restatement (Second) of Conflict of Laws § 283 comments j and k (1971). See also *Davis* v. *Seller,* 329 Mass. 385, 385-388 (1952); *Van Bibber's Case,* 343 Mass. 443, 452-453 (1962).

a timely appeal from the judgment and asserts as error (a) the denial of the motion that count II be reserved for decision by the court; (b) the denial of the motion for judgment n.o.v.; and (c) the judgment for the plaintiff on count II. The Superior Court docket discloses no motion by the defendant for a new trial.

On appeal, the defendant's original brief raises only the issues (a) whether the jury's verdict that the decedent held the locus on constructive trust for the plaintiff was against the weight of the evidence and thus provided inadequate support for the judgment for the plaintiff on count II, and (b) whether the trial judge erred in denying the defendant's motion for judgment n.o.v. When this court afforded the parties an opportunity to file supplemental letter briefs, the defendant further contended that his failure to file a motion for a directed verdict for the defendant on count II (after the judge's denial of the defendant's motion to reserve count II for his own decision) does not prevent appellate review of the sufficiency of the evidence.

The plaintiff argues that the defendant's motion for judgment n.o.v. as to count II was properly denied because the defendant had failed to move for a directed verdict on count II at the close of all the evidence. See Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). The plaintiff further contends that the defendant cannot raise the issue of sufficiency of the evidence on appeal without having moved for a directed verdict on count II in the trial court.[2] See *Martin* v. *Hall,* 369 Mass. 882, 884 (1976); *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 846 (1983).

1. The plaintiff claimed a jury trial. She was entitled to have one except as provided in Mass.R.Civ.P. 39(a) (2), 365 Mass. 802 (1974). At the request of a party, however, a Superior

---

[2] The transcript of the hearing on the defendant's motion for judgment n.o.v. is in the record appendix. The appendix does not include the transcript of the discussions at trial on any motions for directed verdicts or on the defendant's motion to take count II from the jury. The instructions to the jury also do not appear in the record before us. See note 3, *infra,* concerning other omissions from the record.

Court judge may frame issues of fact to be tried by a jury. See G. L. c. 214, § 13; Mass.R.Civ.P. 39(b) and (c), 365 Mass. 802 (1974); Reporters' Notes to Mass.R.Civ.P. 39, Mass. Ann. Laws, Rules of Civ. P. at 176-177 (1982); Smith & Zobel, Rules Practice §§ 39-39.6 (1977 & Supp. 1986). See also *Boston* v. *Dolan,* 298 Mass. 346, 355 (1937); *Boston* v. *Santosuosso,* 307 Mass. 302, 323 (1940). The enforcement of trusts, including constructive trusts, is an equitable proceeding and deals with equitable issues. *Commissioner of Banks* v. *Harrigan,* 291 Mass. 353, 355-356 (1935); 5 Scott, Trusts §§ 461-462.3 (3d ed. 1967 & Supp. 1986); Nolan, Equitable Remedies § 125 (1975). See and compare *Charles River Constr. Co.* v. *Kirksey,* 20 Mass. App. Ct. 333, 337-338 (1986). We hold, however, that it was within the trial judge's discretion to submit to the jury the issue whether the locus was subject to a trust in favor of the plaintiff.

The defendant's motion that the judge reserve the equitable issue for his own decision cannot be considered, in the circumstances, the equivalent of a motion for a directed verdict on count II. That motion alone did not place the trial judge clearly on notice that the defendant was raising or reserving the issue that the evidence was not sufficient to support a verdict for the plaintiff. Indeed, the defendant's motion to reserve count II for decision by the judge was not based upon the insufficiency of the evidence but upon the ground that the existence (or not) of a constructive trust was "not proper for the jury." When the motion to reserve decision on count II was denied, the defendant should have moved for a directed verdict on that count to be sure of protecting his rights. The defendant's failure to do so may be regarded as waiver of any objection to the sufficiency of the evidence to support count II. See *Martin* v. *Hall,* 369 Mass. at 884-885.

The authorities establish that, where a losing party has not moved for a directed verdict at the close of all the evidence, rule 50(b) not only precludes (a) the granting to that party of a motion for judgment n.o.v., but also (b) appellate review of the sufficiency of the evidence to support the verdict. See 5A Moore's Federal Practice par. 50.08 (1986 & Supp. 1986), and

authorities cited; 9 Wright & Miller, Federal Practice §§ 2536-2537 (1971 & Supp. 1986); Smith & Zobel, Rules Practice §§ 50.6-50.8 (1977 & Supp. 1986). This rule has been applied with considerable strictness, with the consequence that neither the trial judge nor an appellate court will enter judgment n.o.v. for the losing party at trial in the absence of a required motion for a directed verdict. It now seems, however, to be recognized that a new trial may be granted where "a jury's verdict is wholly without legal support . . . in order to prevent a *manifest injustice*" (emphasis supplied). *Sojak* v. *Hudson Waterways Corp.*, 590 F.2d 53, 54-55 (2d Cir. 1978), and cases cited. Compare *Schlitt* v. *Florida,* 749 F.2d 1482 (11th Cir. 1985, which dealt with a merely advisory verdict on a matter as to which no jury trial was permissible).

The cases under rule 50(b) in some respects have been confusing. The failure of the defendant's counsel in this case to seek a directed verdict (when his motion to reserve decision on count II for the judge was denied) is understandable. The complications of some situations presented by the rule (as in the present case) might derail even a lawyer of competence and sophistication. We think, however, that the only relief potentially available to the defendant is to grant him a new trial if that is necessary to prevent a manifest injustice. The dilemma presented by rule 50(b) in somewhat similar circumstances was considered in *Michnik-Zilberman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6, 8-10 (1983). We see no relevant authority permitting a present entry of judgment for the defendant.

2. We next consider (as bearing upon the issue whether the verdict on count II results in "manifest injustice") whether (and to what extent) the evidence at trial was adequate to support the jury's verdict that from the decedent's conduct some form of trust of the locus arose for the plaintiff's benefit. In this, we do not have in the record (see note 2, *supra*) material which might be of assistance and, indeed, may not have before us all the testimony.[3]

---

[3] It is not clear that the record appendix contains all the evidence before the trial judge. We note that the transcript is described as a "[p]artial

The principles governing whether a constructive trust arises in particular circumstances are hard to state, beyond indicating that they rest generally upon avoiding unjust enrichment. *Barry* v. *Covich,* 332 Mass. 338, 342-343 (1955). See 5 Scott, Trusts §§ 461-462.2, 466-466.2, and also 1 *id.* §§ 28.1, 31 (3d ed. 1967 & Supp. 1986). To the extent that the existence of a constructive trust of the locus is based upon fraud, as the plaintiff's counsel contends somewhat ambiguously, the contentions must depend upon inferring from the evidence an intention by the decedent, as a knowledgeable lawyer with important responsibilities, to mislead a woman (apparently of substantially less experience than himself in general affairs) with whom for at least fifteen years he had carried on a relationship, described by at least one witness as very close and warm. From at least 1957 until Christmas Eve, 1972, they had been on terms which had led a substantial number of people who met them to believe that they were husband and wife. It could be inferred from the evidence, perhaps, that it was the decedent's intention to induce the plaintiff to move to the locus, which she did in May, 1973, and to continue there the existing caring relationship. The plaintiff contends that such a relationship is one which gives rise to a "fiduciary relationship," of a confidential nature, citing *Cann* v. *Barry,* 293 Mass. 313, 316-317 (1936), which in turn should lead to recognition of a constructive trust.

The Massachusetts cases have viewed fiduciary and confidential relationships more narrowly than do the Restatement (Second) of Trusts § 44 comment c (1959), 1 Scott, Trusts § 44.2, at 341-342 (1967 & Supp. 1986), and Bogert, Trusts §§ 495, 496 (1978 & Supp. 1985). See *Ranicar* v. *Goodwin,* 326 Mass. 710, 713-714 (1951, holding that a confidential

---

[t]ranscript," followed by a list of the names of specific witnesses. The defendant's designation of parts of the transcript ordered for the record appendix does not show whether all testimony was ordered. The plaintiff's brief refers (without any citation of the record appendix) to testimony of the defendant (the administrator) which does not appear in the record before us. We, of course, decide this case only on the record before us. See *Kunen* v. *First Agricultural Natl. Bank,* 6 Mass. App. Ct. 684, 689-692 (1978).

relationship under the Massachusetts decisions does not arise merely because a "conveyance is made between members of a family")[4]; *Kelly* v. *Kelly,* 358 Mass. 154, 156-157 (1970)[5]; *Rudow* v. *Fogel,* 12 Mass. App. Ct. 430, 432-433 (1981). See also *Samia* v. *Central Oil Co.,* 339 Mass. 101, 112-114 (1959); *Young* v. *Paquette,* 341 Mass. 67, 76, 78 (1960). *Meskell* v. *Meskell,* 355 Mass. 148, 151-152 (1969); *Morris* v. *Morris,* 3 Mass. App. Ct. 751, 752 (1975); *Schleifstein* v. *Greenstein,* 9 Mass. App. Ct. 344, 348-349 (1980). See also and compare *Green* v. *Richmond,* 369 Mass. 47, 54-55 (1975)[6]; *Bruno* v. *Bruno,* 384 Mass. 31, 33-34 (1981, involving a deed allegedly procured by undue influence).

Although an inference of a form of fraud by the decedent may be permissible, it is more probable that the jury viewed the decedent's conduct as an unconscionable abuse of a quasi-fiduciary, confidential relationship by at least a grossly negligent failure to perfect the gift of the locus to the detriment of the plaintiff, who relied upon it by moving to the locus. They saw

[4] This case has been adversely criticized in 4 Palmer, Restitution § 19.3, at 116-117 (1978 & Supp. 1986, at 210), as too narrowly relying upon the principle of stare decisis. It seems inconsistent with the law elsewhere in the nation. It is conceivable that, in a case like this, the Supreme Judicial Court will decide to adopt the Restatement rule as more suitable in modern, changed conditions. See and compare *Sullivan* v. *Burkin,* 390 Mass. 864, 867, 869-874 (1984).

[5] The *Kelly* case, 358 Mass. at 156, recognizes that factors, additional to membership in the same family, may give rise to a fiduciary relationship, such as reliance by one less experienced upon one better trained "in financial matters or . . . [by placing] trust and confidence . . . in important affairs" upon that person. Here the plaintiff, whose formal education did not go beyond high school (and who may have been vulnerable by reason of the relationship), had worked for a manufacturing company from and after 1948. The decedent, on the other hand, had gone through college and law school and had gained a significant status in his profession. She plainly relied upon him over a long period of time in matters important to her.

[6] So far as the present case is concerned, the evidence does not require that it be concluded "that the sexual aspect of the relationship between the plaintiff and the decedent was . . . more than incidental" to their mutual enjoyment of each other's company and their reciprocated affection in their daily contacts. See the *Green* case, at 55, and discussion of it in 2 & 4 Palmer, Restitution §§ 8.5, 18.3 (1978 & Supp. 1986 at 153-154, 287). See also Annot. in 3 A.L.R. 4th 13 (1981); Comment, 62 Minn. L. Rev. 449 (1978).

and heard her as a witness, as did the trial judge. They were in a position to appraise her behavior and motives. If the decedent's conduct was intentional (and not merely an inert, lazy failure to prepare and put on record a deed) in the circumstances, they may well have concluded that the conduct was fraudulent.[7]

Other inferences may be drawn from the confused relationship between two people who trusted each other and who obviously cared for each other. The plaintiff could be found to have relied upon the decedent in many respects and it could be inferred from the evidence that he understood her reliance on and trust in him. In the aggregate, we think that there was evidential basis for the conclusion of the jury, which should be respected, that a constructive trust (or an imperfectly stated express trust) should be imposed on the locus.

3. What has been said about the evidence supporting the verdict on count II indicates that, on the evidence most favorable to the plaintiff, the imposition of a constructive trust of the locus for her is not a result which involves any "manifest injustice," see the *Sojak* case, 590 F.2d at 54-55. Accordingly, we do not grant a new trial on the issue under rule 50(b) discussed in part 1, *supra*.

---

[7] We mention the possibility that an express trust of the locus may be shown on the basis of the Christmas card signed by the decedent. That card sufficiently identified the locus, the subject of the gift, and its beneficiary. The existence of the card and the events of its delivery were the subject of testimony of at least two present at a family party of the plaintiff's relatives at which the decedent also was present. The first reference to the card and its contents was received without any objection based on the "best evidence" rule. See generally Liacos, Massachusetts Evidence 361-373 (5th ed. 1981 & Supp. 1985). Later more specific reference to the contents of the card was received over somewhat ambiguous objection. The card may have been a sufficient memorandum of a partly oral trust to satisfy the Statute of Frauds (G. L. c. 259, § 1, Fourth). Perfection of such a trust in some circumstances may provide basis for relief in the nature of restitution. See the general discussion in 4 Palmer, Restitution § 19.3 (1978).

4. No contention appears to be made that the disposition of the house made by the judgment was improper in detail.[8]

*Judgment affirmed.*

---

[8] There was testimony that, since the decedent's death, the plaintiff has been occupying the house on the locus in return for making required mortgage payments.