MAUREEN SULLIVAN vs. JAMES W. ROONEY.

Middlesex.   December 5, 1988. — February 16, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Trust,* Constructive trust. *Fiduciary.*

In an action between two unmarried persons who had formerly lived together
    as if husband and wife, wherein the plaintiff sought to establish her
    interest in a certain house, title to which was held by the husband alone,
    the judge's unchallenged findings demonstrating that the defendant had
    violated a fiduciary duty to the plaintiff called for the imposition of a
    constructive trust, in her favor, of a one-half interest in the house.
    [163-164]

CIVIL ACTION commenced in the Middlesex Division of the
Probate & Family Court Department on October 4, 1984.

The case was heard by *Sheila E. McGovern,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Francis T. Talty (Michael H. Arwe* with him) for the defendant.

*Anne L. Berger* for the plaintiff.

WILKINS, J.   This case is another, in what appears likely to
be an increasing number of cases, concerned with unraveling
the property interests of two unmarried people who became
disaffected after living together for a long time as if husband
and wife. Here, we conclude that the defendant holds a one-half
interest in residential premises in Reading in constructive trust
for the plaintiff. We thus affirm the judgment entered in the
Probate and Family Court directing the defendant to convey
the premises to the plaintiff and himself as tenants in common.

We recite the facts from the judge's findings, supplemented
in certain aspects by the defendant's testimony and by testimony
of the plaintiff, to whose truthfulness the defendant admitted
at trial. The parties had had a thirteen or fourteen year relation-

ship during seven of which they lived together and were engaged to be married at some indefinite future date. The plaintiff gave up her position as a flight attendant in order to maintain a home for the defendant. In 1977, while they were living in an apartment in Medford, they discussed buying a house, and, after some months of searching, they settled on purchasing the Reading home of the defendant's sister and her husband. Each thought of the transaction as a joint purchase of a home that would belong to both of them. On the way to the registry of deeds for the passing of papers, the defendant told the plaintiff that, in order to get 100% Veterans' Administration financing, he would have to take title in his name alone. The deed was so recorded.

The parties lived together in the Reading house from January, 1978, to December, 1980, when the defendant, a career army officer who had been admitted to the bar of the Commonwealth, was transferred to Washington D.C. While living in Reading, the defendant worked full time during the day as an R.O.T.C. instructor and attended law school at night. He paid the mortgage obligations, taxes, utilities, and insurance on the house. The plaintiff, a waitress, put all her earnings and savings into the house, paying for the food and household supplies and for much of the furniture. She did all the housework, the decorating, and the entertaining of the defendant's colleagues. The defendant promised at various times to place the property in joint ownership, but he never did.

In June, 1982, the plaintiff argued, on the defendant's urging, to join the defendant in the Washington D.C. area, where again she kept house while he paid their expenses. The defendant told the plaintiff that they should rent out the Reading house rather than sell it, so they would have a home to go back to in a few years and to which they could retire. After a year, the plaintiff, unhappy in Virginia, moved back to Massachusetts. The relationship deteriorated, and the two separated in late 1983. The plaintiff wished to move back into what she considered her home, the house in Reading, but the defendant told her she could not because it was rented.

In 1984, the plaintiff brought this action to obtain title to the house as tenant in common with the defendant. The judge found that the defendant had promised to convey joint title at the time of the purchase, that he had reiterated that promise on several occasions up through early 1984 (when he told the plaintiff to send him a deed to sign), and that he admitted to having made these promises. The judge further found that, in reliance on these promises, the plaintiff was induced to stay in the relationship, to contribute her earnings and services, and to give up her home to move to Virginia. The judge also found that the plaintiff had made these contributions to her detriment, because she gave up her position as a flight attendant and lost career opportunities and job benefits. The judge ruled that the defendant would be unjustly enriched if he were allowed to keep sole title to the house. The judgment ordered the defendant to convey to the plaintiff a half-interest in the house. We transferred the defendant's appeal here.

We are unable to identify the principle of law on which the judge relied in awarding the plaintiff a tenancy in common in the Reading property. The judge's rulings of law speak of compensation for services and a "quantum meruit theory." Even if we were to recognize that the plaintiff was entitled to recover the fair value of her services, without offsetting the value of her services against the fair value of the defendant's contributions during their relationship, there are no findings, nor any evidence that would warrant findings, concerning the fair value of the plaintiff's services or the fair value of one half of the equity in the Reading property at the time of the trial.

The plaintiff argues here that the defendant's oral promises to give her one half the property are enforceable in the circumstances despite the defendant's reliance on the Statute of Frauds, and, alternatively, that the defendant holds one half the property on a constructive trust in favor of the plaintiff. We accept the plaintiff's argument that the evidence and the judge's findings demonstrate that the judgment should be upheld on the theory of a constructive trust.[1]

---

[1] We need not, therefore, consider the plaintiff's other claim: that her partial performance of the agreement, including a substantial change in her

The judge's unchallenged findings of fact demonstrate that there was a fiduciary relationship between the parties and that the defendant violated his fiduciary duty to the plaintiff. Equitable principles impose a constructive trust on property to avoid the unjust enrichment of a party who violates his fiduciary duty and acquires that property at the expense of the person to whom he owed that duty. See *Barry* v. *Covich*, 332 Mass. 338, 342-343 (1955); *Hatton* v. *Meade*, 23 Mass. App. Ct. 356, 363 (1987). Here the plaintiff was less educated (a high school graduate) and less experienced (she is a waitress) than the defendant (a career army officer attending law school at the time of the purchase of the house). She relied on him over a long period in important matters. See *Kelly* v. *Kelly*, 358 Mass. 154, 156 (1970). That reliance was reasonable, and the defendant knew of and accepted the plaintiff's trust in him. See *Hatton* v. *Meade*, *supra* at 365, which has many factual parallels to this case. See also *Markell* v. *Sidney B. Pfeifer Found., Inc.*, 9 Mass. App. Ct. 412, 443-444 (1980).

It would be unjust not to impose a constructive trust in this case. The plaintiff gave up her career as a flight attendant and undertook to maintain a home for the defendant while he advanced his career. She contributed her earnings and services to the home. The defendant's assurances to the plaintiff that

---

circumstances to her detriment made in reasonable reliance on the defendant's admitted oral promises, estops him from relying on the Statute of Frauds as a defense and entitles her to specific performance. See *Davis* v. *Downer*, 210 Mass. 573, 576 (1912); *Glass* v. *Hulbert*, 102 Mass. 24, 35-36, 43 (1869). The principles expressed in Restatement (Second) of Contracts § 129 (1981) are said to be consistent with the law of Massachusetts, although somewhat less strict than the rule set forth in the cases cited above. *Hickey* v. *Green*, 14 Mass. App. Ct. 671, 673 (1982). Section 129 states: "A contract for the transfer of an interest in land may be specificially enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." See also § 129 comment d.

As will be seen, the circumstances that demonstrate a constructive trust in this case are remarkably similar to circumstances that would deny the defendant the right to rely on the Statute of Frauds on principles of estoppel.

they would own the property together (although title would be taken only in his name), his later promises to transfer title to joint ownership, and the plaintiff's reasonable reliance on those promises made by one in whom she reasonably placed special confidence call for the imposition of a constructive trust in the plaintiff's favor on one-half the Reading property.[2]

*Judgment affirmed.*

---

[2] The plaintiff has not appealed. The judgment calls for the conveyance of the property to the plaintiff and the defendant as tenants in common, and thus inferentially subject to the first and second mortgages on the property. It appears that the parties may not have agreed on what the judgment provides, if anything, about the use of rent received pendente lite to pay interest obligations on the second mortgage. The Probate and Family Court shall retain jurisdiction to decide any motion, or other request, concerning the disposition of rent proceeds received pendente lite that is filed within sixty days after the rescript is issued from this court.