Welch, J.
This action involves a couple who once lived together while involved in a romantic relationship. Following the apparent collapse of that relationship, plaintiff Lynda A. Sullivan (“Sullivan”) sued defendant Glen J. McCann (“McCann”) for money she claims is owed to her as a result of services rendered to McCann personally and to Lowell Armored Car Service, Inc., a corporation founded by the defendant’s father.
Sullivan asserts two causes of action. Count I is a claim for the fair value of her services. Count II is a claim alleging assault and battery.[1]
Defendant McCann moved for summary judgment on both counts. For the reasons explained below, that motion is ALLOWED in part and DENIED in part.
FACTS
The following facts taken in the light most favorable to the plaintiff, are derived from the pleadings, affidavits, and depositions of the parties.
For some time during the 1980s, Sullivan and McCann (along with the plaintiffs two minor children) lived together at 196 Kingsbury Avenue in Bradford, Massachusetts. During that time the plaintiff was an employee of Lowell Armored Car Services, Inc.[2] where she received a salary as compensation for her services to the corporation. Prior to her employment with LACS, the plaintiff had worked as a waitress.
At some time in 1990 McCann conveyed the Kingsbury Avenue residence from himself as sole owner to McCann and Sullivan as joint tenants. The parties’ relationship ended some time around November, 1991.
Lowell Armored Car Services, Inc. (“LACS”) is a Massachusetts corporation with a principal place of business in Bradford, Massachusetts. The corporation was organized in 1955 by the defendant’s father, John J. McCann. Prior to John J. McCann’s death in December, 1989 he was the sole owner of all shares of LACS stock.[3] After distribution of the father’s shares, Glenn McCann became a minority shareholder in LACS. Defendant Glen J. McCann now holds twelve and one half (12 V&) shares in LACS.
Through this suit Sullivan asks the court to impose a constructive trust on assets owned by McCann or LACS. Sullivan’s amended complaint requests that her claim “be established in and to the corporation known as Lowell Armored Car Service, Inc.” and that McCann be ordered to convey to her a “one half interest”[4] in LACS and account to her all of LACS’s profits. Plaintiff Sullivan never names LACS as a defendant in this suit.
The plaintiff also asserts that on or about November, 1991 (the time of their breakup) she was battered by McCann in their Kingsbury Avenue home in the presence of her two children. Sullivan claims that as a result of defendant’s alleged tortious conduct she suffered multiple bruises, and thus seeks damages for assault and battery.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14 (1989).
With this standard in mind, summary judgment is appropriate as to certain of Sullivan’s claims.
A. Count I: Fair Value for Services
The main thrust of Sullivan’s argument is that everything she did at home and at work was induced by McCann’s alleged promise that they were “building a future together” and that, when the relationship broke down in 1991, she was entitled to something in compensation for her efforts.[5]
The plaintiffs logic seems to run as follows: the services she performed as the defendant’s romantic companion and housemate, together with McCann’s alleged promise, meant that at the termination of their relationship she was “entitled” to benefit from the profits of the corporation. Sullivan’s argument, however, makes a bold connection between McCann as an individual and McCann as an LACS shareholder, and she notes:
Even though he [McCann] is a minority stockholder he operated the business as if it were his own and *355 expected it to be basically his someday with some profits going to his sister. I was always led to believe that our life together was as if we were man and wife and that we would work together to build our future (emphasis supplied).
Plaintiffs Affidavit in Opposition to Defendant’s Motion for Summary Judgment
Sullivan’s assertions, without more, do not constitute a cause of action. A claim based on a promise such as the one McCann is alleged to have made might be capable of surviving summary judgment if the underlying promise had been made in the context of a valid marriage.
However, the courts of our Commonwealth do not recognize the legal rights of those involved in a “common law marriage.”[6] See Collins v. Guggenheim, 417 Mass. 615, 617 (1994) (incidents of the marriage relationship do not attach to an arrangement of cohabitation without marriage); Fliciano v. Roseman Silver Co., 401 Mass. 141, 142-43 (1987). To the extent that the plaintiff claims the creation of a constructive trust or fiduciary relationship based upon the services she rendered to the household and business during the romantic relationship, such a claim is not recognized in Massachusetts. Id.
The plaintiffs reliance on Sullivan v. Rooney, 404 Mass. 160 (1989), is misplaced. The facts of that case — where the court essentially imposed a constructive trust — are dramatically different than the present case. In Sullivan v. Rooney, the parties were involved in a relationship for a period of thirteen to fourteen years, during seven of which they lived together and were engaged to be married at some future time. During the course of their relationship the couple decided to purchase real estate in Reading, Massachusetts — each contributing substantial sums of money and each believing this to be the joint purchase of a home which would belong to both of them. As they were on the way to the registry of deed for the closing, Rooney informed his fiancee that in order to obtain 100% Veterans’ Administration financing he would have to take title in his name only. The property was so conveyed and recorded, and, although Rooney promised at various times to place the property in joint ownership, he never did. Id. At 162.
The Probate Court found that by relying on Rooney’s promise to convey the property to her the plaintiff was wrongfully induced to remain in their relationship.[7] The court also noted that Sullivan had — to her detriment— given up gainful employment as a flight attendant in order to help support the defendant while he attended law school, thereby losing out on valuable career opportunities and job benefits. Id. 162.
Thus, Maureen Sullivan changed her position financially, spending thousands of dollars towards a down payment and contributing significantly towards the upkeep of a home to which she, ironically, held no title. In pointed contrast to Sullivan v. Rooney, there is no evidence that Lynda Sullivan ever invested or contributed any money.[8] In the instant case, the plaintiff argues that she too gave “value” in the form of her services to McCann and LACS. Unlike the plaintiff in Sullivan v. Rooney, however, Lynda Sullivan cannot claim she contributed financially. Instead, she asserts that the services[9] she provided constituted a form of “value”[10] for which she ought to be reimbursed.
In Sullivan v. Rooney this “value for services” line of reasoning was largely bypassed in favor of the more directly equitable argument: that which related to the plaintiffs entitlement to title in the Reading property based upon the plaintiff paying money for the house. In essence, Sullivan involved the traditional type of fraudulent inducement (i.e. surrendering money based upon a false promise) where the Supreme Judicial Court has consistently recognized the existence of a constructive trust. See Collins v. Guggenheim, supra at 618.
Significantly, in Sullivan v. Rooney, the Court declined to recognize the plaintiffs right to recover the fair “value” of her “services” within the context of the relationship.
Even if we were to recognize that the plaintiff was entitled to recover the fair value of her services . . . there are no findings, nor any evidence that would warrant findings, concerning the fair value of the plaintiffs services. Id. 162.
Here, too, there is no evidence on which a court could base a decision of the fair value of Lynda Sullivan’s “services.” Where the plaintiff here provided no financial contributions and bases her argument solely on a “value for services” theory, her claim must fail.
At the end of the day, the plaintiff must face the grim reality that, unless faced with a compelling factual scenario,[11] our courts will not recognize the claims of former romantic partners for compensation based upon providing services in the context of a relationship that was never subject to the “formal solemnization of marriage.”
Even if one generously reads Count I as asserting a claim that the defendant had authority to bind LACS to a promise to compensate the plaintiff, such a claim must fail.
Implicit in Sullivan’s description of McCann’s role in the company is the suggestion that he somehow had the authority to bind LACS. In her deposition Sullivan reiterates her assertion that, although McCann was merely a minority shareholder, he “ran” the LACS corporation. While she admits that the business was well established (indeed, it had been started some thirty years previously), she argues that she and the defendant were “building up the business.” Sullivan Deposition. Likewise, Sullivan claims that when McCann conveyed the property from himself to McCann and Sullivan as joint tenants in 1990 it was meant to be as “compensation” for the work she performed for LACS.
*356 Q. Didn’t you testify previously that Glenn McCann only owns a certain percentage of the corporation?
A. Yes.
Q. Why would he be obligated to put you on his personal residence for a corporate debt?
A. Because Glenn acted like the whole company was his, and he believed it would be his some day.
Q. But, in fact, it was not his. Isn’t that true?
A. As far as paperwork, yes.
Thus, while on the one hand the plaintiff argues in support of McCann’s ability to bind the corporation, on the other hand she admits to her awareness that, in actuality, LACS was not “his” to run.
It is settled that mere stockholders of a corporation are not generally held responsible for the liabilities of the corporation, or vice versa. United States v. Normandy House Nursing Home, Inc., 429 F.Supp. 421 (D.C. Mass. 1977). Here the defendant is but a minority shareholder (with twelve and one half shares). While plaintiff claims she is owed money based on services she performed for both the joint household and the corporation, she has failed to name the corporation as a defendant in this suit. Instead, she makes the inconsistent assertions that, while McCann is the individual who breached his alleged promise to her, the “compensation” must come from the corporation. McCann was not in a position to bind the corporation. In any event, as a non-party, the corporation cannot be held responsible for the alleged “debt” to the plaintiff.
Summary judgment is therefore ALLOWED as to Count I.
B. Count II: Assault and Battery
The defendant argues that summary judgment must also enter on plaintiffs claim of assault and battery. I disagree. There exist disputed issues of material fact that preclude summary judgment at this time.
First, McCann states that there are no medical reports or record of Sullivan’s alleged injuries. Such reports are not a necessary element of proving an assault and battery claim. For example, the fact that many domestic abuse victims fail to obtain prompt medical assistance does not in itself render their claims unviable.
Second, the defendant argues that insufficient facts are pleaded as to the details of the assault and battery. Contrary to this assertion, the plaintiff clearly articulates the time and setting of the alleged assault, and notes that her children were present as witnesses.
Summary judgment as to Count II is therefore DENIED.
ORDER
Based upon the foregoing, it is hereby ORDERED that defendant’s motion for summary judgment be ALLOWED as to Count I and DENIED as to Count II.

Both claims are asserted against McCann personally.

The precise nature of the plaintiffs employment is also a matter of dispute. The plaintiff claims she served as general manager of the corporation, the defendant argues that her job was merely that of a guard and messenger. For the purposes of this motion, the Court assumes plaintiff served as the general manager and received compensation from the company for her services.

John J. McCann died intestate and, as a result, ownership in LACS passed to several shareholders.

It is not clear exactly what is meant here: whether plaintiff desires half of McCann’s shares — which would amount to six and one quarter shares — or whether she wants one half of all of LACS’s corporate interests, or one half of a share in the corporation. In any event, the disposition of this motion does not hinge on the correct interpretation of this language.

In her Amended Complaint Sullivan articulates her claims as follows: “The Defendant, on or about May 1, 1984, requested the Plaintiff to the [sic] work about his house as his housekeeper, and to act and [sic] his companion, he also requested that she work in his business, Lowell Armored Car Service, Inc., on trucks and as a general manager, and promised her that if she would do so and look after him, that he would share the Lowell Armored Car Service, Inc. Business with her. All of these representations were made many times to the Plaintiff over approximately eight (8) years” (emphasis supplied) .Plaintiffs Amended Complaint at ¶8.

It is not argued that the parties were ever married.

During this time the plaintiff continued to contribute her earnings towards the home.

Moreover, there is no evidence that the plaintiff gave up a lucrative job or a promising career in order to take the position with LACS.

These include performing various domestic duties, assisting at LACS, and generally helping to make McCann’s life easier at home.

In oral argument defendant noted that McCann received neither rent nor property tax contributions from the plaintiff, and that she contributed no money towards the operation of the home. This is in sharp contrast to the plaintiff in Sullivan v. Rooney who “put all her earnings and savings into the house, paying for food and household supplies and for much of the furniture." Sullivan v. Rooney, 404 Mass. 160, 161 (1989).

indeed, given the merits of Sullivan v. Rooney, a court of equity may well have reached an identical result even if the parties had not been involved in a romantic relationship.