King, J.
The plaintiffs, the four children of the late Thomas W. Rogers, Sr., are aggrieved because most of their late father’s estate was inherited by the children of his second wife by a prior marriage and not by them. They seek damages for being deprived of their father’s entire estate. The plaintiffs assert a single claim against each of the three defendants. Count I and Count II arise out of an alleged breach of fiduciary duty by Thelma Rogers and Mario Ciullo, respectively. Count III arises out of the alleged legal malpractice of Theodore C. Regnante.
This matter is before the court on cross-motions for summary judgment. After hearing and considering the briefs and arguments of counsel, the court will grant summary judgment in favor of the defendants for the reasons set forth in this memorandum of decision.
BACKGROUND
As noted below, certain facts in this case are disputed, but none of the disputed facts are material to the resolution of the claims raised by the plaintiffs.
Thomas Rogers, Sr. (Rogers) married his first wife, Mary Ann Pennell, in the early 1930’s. Together, they raised four children: Thomas Rogers, Jr., Judith Breed, Polly LeBlanc and Sally Falcone. These four individuals are the plaintiffs in this action. The children grew up in the home in Swampscott that Rogers purchased in the 1930’s and where he maintained his residence until his death in 1991. After they moved out of the house, Rogers’ children, their spouses, and their children, remained close to Rogers, spoke to him and Mary Ann frequently, visited them often and spent many holidays and vacations together. In 1977, Mary Ann died. At that time, the couple’s estate was valued at approximately $2 million, earned primarily from Rogers’ business.
In 1977, shortly after the death of his first wife, Rogers married Thelma F. Wigglesworth (Thelma) whom he had known for many years. At the time of their marriage, Rogers was 74 years old and Thelma was 66. Thelma had three children of her own from a prior marriage, two sons, William and Robert Wigglesworth, and a daughter, Susan Johnson. Upon her marriage to Rogers, Thelma’s personal estate was valued at approximately $250,000. During their marriage, they did not commingle their assets. Rogers and Thelma had a loving and caring marriage. After Rogers’ health declined in 1985, Thelma cared for him until his death in 1991.
Prior to their marriage, Rogers and Thelma executed an antenuptial agreement, which was drafted by attorney Mario Ciullo,[3] for the purpose of disavowing any claim to each other’s property. Each agreed that any and all property brought into the union, or acquired thereafter, “shall be that one’s sole and separate property,” except that, upon Rogers’ death, Thelma would receive a life estate in the marital home in Swampscott. The antenuptial agreement expressed the parties’ intent that each party’s property would “ultimately pass to that party’s decedents [sic] by his or her prior marriage.” The antenuptial agreement, however, contained the following provision:
[NJothing contained in this agreement shall be deemed to constitute a waiver by either party of any gift, bequest or devise that the other party may choose at any time to make to him or her in any manner.
The plaintiffs will testify that Rogers told them on several occasions that he intended to leave his entire estate to them. For example, before mariying Thelma, Rogers told his children that his re-marriage would not affect their inheritance. Following Rogers’ wedding to Thelma, Rogers told his children in the presence of Thelma that his estate would be left to them and that Thelma’s property would be left to her own children. In 1985 at either Thanksgiving or Christmas, Rogers told his son, Thomas Jr., that he should not wony about his inheritance and that his estate would be passed to his children. The facts set forth in this paragraph are not agreed to by the defendants. There is evidence that Rogers did not intend to leave his entire estate to his children.
On October 31,1979, Rogers executed a will leaving his estate to his children except for: (1) a life estate in the marital home to Thelma; and (2) an annuity in an amount sufficient to generate $12,000 per year in income for Thelma, with the exclusive power in Thelma to appoint the remainder of the annuity to any person or to her estate. The record does not disclose who drafted the 1979 will or whether Rogers had prior wills.
*146 Until 1973, Rogers had been a Director of the Essexbank. After resigning as Director, Rogers continued to maintain an investment account at the bank. His contact at the bank was Mr. James Mitchell, an attorney and an officer in the trust department. In September 1980, after discussing his estate plans with Mr. Mitchell, Rogers and Mitchell met with attorney Theodore C. Regnante, who maintained an office in the building where the bank was located. Attorney Regnante then drafted an estate plan consisting of a will and a seven page revokable Indenture ofTrust, known as the Thomas W. Rogers Trust. The Trust was designed to minimize Rogers’ estate taxes by taking advantage of a marital deduction which, under certain circumstances, exempted from taxes any property a testator left to the surviving spouse. Both documents were executed on November3,1980 by Mr. Rogers. Under the 1980Trust, the Essexbank[4] was appointed trustee.
In his 1980 will, Rogers left all of his tangible property to Thelma. However, he reserved the right to leave a memorandum concerning a different disposition of his tangible property.
The 1980 Trust was a so-called “A-B Trust,” that is, upon the death of Rogers, a portion of his assets would be transferred to the ATrust, for the benefit of Thelma, and the balance to the B Trust. The properly in the B Trust would be distributed to his four children upon Rogers’ death. An amount equal to the maximum amount qualifying for the marital deduction would be deposited in the A Trust. Thelma, during her lifetime, had the right to the ATrust income and to the principal upon her request, and, at her death, the trustee would pay the remainder of the A Trust to such person or persons as Thelma might direct and appoint by will, including the right to appoint to her own estate. In the event Thelma did not make such an appointment, the proceeds from the A Trust would be transferred into the B Trust. Attorney Regnante testified at his deposition that Rogers made it clear to him that he wanted Thelma to control the assets in the A Trust and for Thelma to decide to whom she wished to leave any remainder upon her death. The plaintiffs dispute that this was Rogers’ intent.
On June 15, 1982, Rogers sent a handwritten note to Regnante requesting a change to his “last will.” In that note, Rogers wrote:
“I wish to change a part of my last will, as follows— under the title of personal property I possess at the time of my death, automobile, clothing, etc., now left to my wife, Thelma, I wish to change so that the above personal property will go to my four children along with the rest of my estate.” (Emphasis added.)
No amendment to the will was made in response to this note because under Rogers’ will, his memorandum would be treated as a codicil to his will. Attorney Regnante testified at his deposition that, in response to this note, he questioned Rogers to make sure Rogers understood that Thelma would control the assets in one of the Trusts. According to Regnante, Rogers told him that he understood this and that he had only meant to communicate that his personal property along with the proceeds of the “B” trust would be left to his children. Once again, as to Rogers’ intent, the plaintiffs contest that Rogers ever intended to leave any portion of his estate to Thelma.
In August 1984, James Mitchell and Rogers met to discuss two changes that Rogers wished to make in his estate plan: he wanted Thelma to have the option to move to a different residence and to have that new residence paid for by the Trust: and he wanted his son, Thomas, Jr., to have the option to purchase his New Hampshire property at its fair market value before the property was sold and the proceeds distributed equally to his children. Mr. Mitchell prepared a memorandum dated August 20,1984 setting forth the changes which Rogers wished to make. Rogers approved that memorandum on August 22, 1984. He later met with attorney Regnante to implement these changes.
After meeting with Rogers, attorney Regnante had an attorney in his office draft a new will and a new fifteen page revocable Indenture of Trust, known as the Thomas W. Rogers Trust. The will and Trust were executed by Rogers on October 11, 1984. He initialed each page of the Trust before signing the last page. The 1984 Trust included at least the two substantive changes mentioned in the August 20, 1984 memorandum,[5] The nonsubstantive changes were designed to conform the estate plan to the requirements of recent changes in the tax laws.[6] The 1984 Trust provided for a General Marital Trust and a Special Marital Trust in place of the A-B Trust contained in the 1980 Trust. The General Marital Trust was to be funded in “an amount equal in value to the maximum marital deduction allowable in determining the Massachusetts estate tax on [Rogers’] Massachusetts gross estate for estate tax purposes diminished by the value ... of all other items in [Rogers’] Massachusetts gross estate which would qualify for the Massachusetts marital deduction” which would pass to his wife.
Thelma was entitled to the net income from the General Marital Trust during her lifetime. In addition, at the discretion of the trustee, she could be paid so much of the principal thereof as the trustee deemed necessary for her support. Upon Thelma’s death, “the trust property, including any undistributed and accrued income, shall be distributed to such person or persons as she may by will, . . . appoint, including the right in her to appoint to her own estate and in default of any such appointment by her will, the same shall be added to and consolidated with the trust fund . . . known as the ‘Special Marital Trust.’" Rogers placed his initials in the margin next to the provision that granted Thelma a general power of appointment over the General Marital Trust as he did on every page of this document.
Upon Rogers’ death, if Thelma survived him, the balance of his estate remaining after the funding of the *147 General Marital Trust, was to be transferred to the Special Marital Trust. Under the terms of the Trust, Thelma was also entitled to the net income from the Special Marital Trust during her lifetime and, in the trustee’s discretion, to so much of the principal as the trustee deemed appropriate. Upon the death of Thelma, the proceeds of the Special Marital Trust were to be distributed to the plaintiffs.
It is clear that the 1979,1980 and 1984 estate plans are not consistent with an intent by Rogers to leave his entire estate to his children. In his deposition, Attorney Regnante testified that it was Rogers who told Regnante that he wanted to set up the two trusts and that one of the trusts would be for the benefit of his wife, who would have the power of appointment. Regnante also testified that it was Rogers’ specific intent to allow Thelma to decide who would receive the balance of the Trust benefiting her after her death. He also testified that he read or summarized each page of the 1984 Indenture of Trust to Rogers, answered any question that Rogers had, and then had Rogers initial each page of the agreement after Rogers read the page. There is nothing in the record to explain why Rogers would provide attorney Regnante and his children with contradictory information about what he intended to do with his estate.
Regnante first represented Rogers in 1980. He never represented Thelma. There is no evidence that attorney Regnante had any knowledge prior to this litigation of the antenuptial agreement executed by Rogers and Thelma.
In February 1990, Rogers was admitted to the Lafayette Convalescent Home in Marblehead due to depression and dementia. There is no dispute that up to at least 1984, Rogers, a Harvard-educated bank director and sophisticated businessman, was mentally competent, possessed the requisite capacity to execute his estate plans and that he did so free from fraud or undue influence.
On September 25, 1990, Thelma executed a will drafted by attorney Mario Ciullo. In the 1990 will, Thelma appointed to her estate the General Marital Trust property. Attorney Ciullo was aware of Rogers’ 1984 Trust when he drafted Thelma’s 1990 will.[7]
Rogers died on May 17, 1991. Upon his death, the General Marital Trust was funded with $854,376, and the Special Marital Trust was funded with $518,828. During the remainder of her life, Thelma received approximately $200,000 from the General Marital Trust. Thelma died on January 13, 1994. Pursuant to the appointment in her will, the property in the General Marital Trust went to her estate. Pursuant to the 1984 Trust, the property in the Special Marital Trust went to the plaintiffs. On May 16, 1994, the Essex County Probate and Family Court decreed that Thelma’s 1990 will was her last will and testament and appointed William and Robert Wigglesworth as executors.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c); 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
I. Breach of Fiduciary Duty Claim Against Thelma Rogers
The claim against the Estate of Thelma Rogers is based on the 1977 antenuptial agreement. Under the terms of the antenuptial agreement, Thelma explicitly agreed that “all properties of every kind and nature and description” that Rogers had or acquired in the future would remain his “sole and separate property." Since Thelma expressly waived any interest that she had or may, in the future, have in Rogers’ separate property and she agreed to “make no claim” to Rogers’ property “during their joint lives or thereafter," the plaintiffs contend that Thelma breached a fiduciary duty she owed to Rogers when she signed a new will in 1990 granting the power of appointment to the proceeds of the General Marital Trust to her own estate knowing that she had agreed in the antenuptial agreement that Rogers’ entire estate would be bequeathed to the plaintiffs.
The motion for summary judgment ofThelma’s estate rests on three grounds: (1) there is no evidence that Thelma breached a fiduciary duly; (2) Thelma owed no fiduciary duty; and (3) the promise relied upon was not reduced to writing and is, therefore, barred by the Statute of Frauds, G.L.c. 259, §5A. Because the first ground is dispositive of the plaintiffs’ claim against Thelma’s Estate, the court will not address the remaining grounds for the summary judgment motion.
As a general matter, it is true that a court may under certain circumstances impose a constructive trust on *148 property to avoid unjust enrichment of a party who breaches a fiduciary duty owed to another in the context of a marital or amorous relationship. See Sullivan v. Rooney, 404 Mass. 160, 163 (1989). Such a decision, however, is limited to circumstances where one party takes advantage of another’s inexperience, sophistication and the reliance that the benefitted person will not act in their self-interest. Id. Here, there is no evidence that Thelma took advantage of Rogers.
The clear purpose of the antenuptial agreement was to prevent each party from making a claim against the other party’s property. Without the antenuptial agreement, Thelma would have been entitled to a statutory share of Rogers’ estate even if he specifically provided in his will that she was to receive nothing. G.L.c. 191, §15. The antenuptial agreement was not intended to prevent either party from bestowing their munificence on the other. This intent is manifest from the following provision in the antenuptial agreement.
[N]othing contained in this agreement shall be deemed to constitute a waiver by either party of any gift, bequest or devise that the other party may choose at any time to make to him or her in any manner.
Rogers chose to bequeath a significant portion of his estate to Thelma on three occasions: in his 1979 will, in his 1980 estate plan and his 1984 estate plan. Even if the plaintiffs are correct that on each of those three occasions his true donative intent was thwarted by incompetent attorneys, the record is devoid of any evidence that Thelma had reason to know that Rogers’ true intent was different from what was expressed by him in clear an unequivocal testamentary documents. The plantiffs claim that the subject was raised by Rogers on Rogers’ and Thelma’s wedding day in 1977. This does not create a material issue of fact for trial because Rogers was free to change his mind after 1977.
Instructive to the facts of this case is Whitney v. Buck, 3 Mass.App.Ct. 766 (1975). The heirs of a testatrix, relying on an antenuptial agreement, challenged certain transfers made during her lifetime to her husband. There, the court noted, as in this case, that nothing in the antenuptial agreement "would bar either the husband or the wife from making gifts to the other during their lifetimes.” Id. at 766. In rejecting the plaintiffs’ challenge to the transfers, the court wrote that the relationship of the husband and wife seemed a happy one, “that her husband had taken good care of her, and that she wanted him to have the property.” Id. Ultimately, the court concluded that, “the plaintiffs have failed to sustain their burden of showing that transfers of [the testatrix’s] funds into joint names were not made -with donative intent.” Id. at 767. Likewise, in this case the plaintiffs have failed to carry their burden of showing that Rogers did not act with a donative intent and that Thelma breached the antenuptial agreement in 1990 when she appointed her own estate to receive the proceeds of the General Marital Trust.
II. Breach of Fiduciary Duty Claim Against Mario Ciullo
The plaintiffs’ claim against the Estate of Mario Ciullo is based upon their assertion that there was a fiduciary relationship between attorney Ciullo and his client Rogers, and that Ciullo breached his fiduciary duty to Rogers when he drafted a will for Thelma in 1990 in which she exercised her power of appointment in favor of her estate knowing that this was contrary to Rogers’ intent and contrary to their 1977 antenuptial agreement. The Estate of Mario Ciullo moves for summary judgment on the grounds that Ciullo owed no fiduciary duty to Rogers or the plaintiffs and that, even if he had such a duty, there is no evidence that he breached that duty.
The court agrees that attorney Ciullo did not breach a duty of care to the plaintiffs or Rogers, assuming that such a duty existed. As noted previously, there is simply no inconsistency between the 1977 antenuptial agreement and the donative intent expressed in Rogers’ estate plans benefitting Thelma. Under these circumstances, the motion for summary judgment of the Estate of Mario Ciullo will be allowed.
III. Legal Malpractice Claim against Theodore C. Regnante
The plaintiffs allege that because attorney Regnante should have known that Rogers intended to leave his entire estate to his own children, he was negligent in drafting the Trust which “thwart[ed] [their father’s] desires” to leave all his property to his children. The plaintiffs claim they are intended beneficiaries of their father’s estate plan and seek to recover damages against attorney Regnante.
In his motion for summary judgment, attorney Regnante argues that: (1) he owed no duty of care to the plaintiffs: (2) there is no evidence that he breached any such duty of care; and (3) any evidence of Rogers’ intent which contradicts the estate plan is not admissible. In ruling on the summary judgment motion, the court need only address the second argument.
The court assumes for purposes of this motion that the plaintiffs have standing to assert a legal malpractice claim based on a third-party beneficiary theory. See Connecticut Junior Republic v. Doherty, 20 Mass.App.Ct. 107, 112 (1985). Nonetheless, the court concludes that there is insufficient evidence to support the plaintiffs’ claim that attorney Regnante breached his duly of care. The record contains the following evidence or lack of evidence concerning what attorney Regnante knew or should have known concerning Rogers’ true intent.[8]
There is no evidence that attorney Regnante knew of the 1977 antenuptial agreement. There is no evidence that attorney Regnante knew of the statements concerning Rogers’ intent attributed to Rogers by the plaintiffs. On the other hand, Regnante did see Rogers’ 1979 will, drafted by another attorney, which showed *149 substantial assets bequeathed to Thelma upon Rogers death. The 1980 estate plan drafted by attorney Regnante was signed by Rogers whom Regnante knew to be competent, intelligent and sophisticated in business matters.
Attorney Regnante did receive the June 15, 1982 note from Rogers suggesting, contrary to what was in his estate plan, that Rogers intended to leave the “rest” of his entire estate to his children. For the purposes of this summary judgment motion, the court will assume that ■ attorney Regnante did not follow up on this note.
In 1984, at Rogers’ request, Regnante revised Rogers’ estate plan. Rogers initialed every page before signing the estate plan granting Thelma the general power of appointment over the General Marital Trust. At the time he read and signed the 1984 estate plan Rogers remained competent.
All this evidence shows is that both before and after the 1982 handwritten note suggesting that Rogers wanted to leave the “rest” of his estate to his children, Rogers read, initialed each page and signed documents clearly establishing a contrary intent. “Often an estate plan may contain provisions which are idiosyncratic, disappointing, and even unthinkable to those with defeated expectations. Perhaps it is to ward off attacks from such persons that the general rule has developed that a competent testator meant what he signed and signed what he meant.” Connecticut Junior Republic v. Doherty, 20 Mass.App.Ct. at 111. The evidence in favor of the plaintiffs, consisting of the 1982 memorandum, is simply insufficient to support plaintiffs’ position that there is evidence raising a triable issue of fact for a jury on the plaintiffs’ malpractice claim against attorney Regnante. For this reason, summary judgment in favor of attorney Regnante will be granted.
ORDER
For the foregoing reasons, the court orders that defendants’ motions for summary judgment be ALLOWED; and, plaintiffs’ motion for summary judgment be DENIED.
Judgment shall enter dismissing the complaint.

 Attorney Ciullo died prior to the initiation of this action. His estate is represented by Harold Chase.

 Fleet Bank of Massachusetts, N.A. has succeeded Es-sexbank as trustee and is also the trustee under a subsequent trust executed in 1984.

 A comparison of the 1980 and 1984 estate plan reveals a third substantive change. In the 1980 plan, upon Rogers’ death, the B Trust assets were to be distributed to Rogers children. Under the 1984 plan, Thelma had a life estate in both trusts. Rogers’ children’s interest did not vest in the B Trust until after Thelma’s death.

 See the Economic Recovery Tax Act of 1981. Under this law, Rogers, if he wanted to, could have granted Thelma a life estate in the amount representing the marital deduction and left the remainder interest to his children. For a discussion of the tax consequences of the 1981 tax changes affecting the marital deduction, see M.C.L.E. Estate Planning Basics, p 223-30 (1994).

 Rogers executed an amendment to the 1984 Indenture of Trust on October 3, 1990 while he was in a nursing home. The amendment was suggested by a trust officer at Es-sexbank in order to maximize estate tax savings. The Bank asked attorney Ciullo to draft the amendment. The relevance of this amendment to the case is that attorney Ciullo was aware of Rogers estate plan when he drafted Thelma’s will.

 Considering the evidence in the light most favorable to the plaintiffs, as it must, the court, for purposes of the summary judgment motion, has disregarded Regnante’s testimony concerning Rogers’ clearly stated intent to favor Thelma.